**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Richmond Division**

**VICTORIA L. FRAZIER,**

**Plaintiff**

v.                                          **CIVIL NO. 3:11cv497-JRS**

**EXPERIAN INFORMATION
SOLUTIONS, INC.,** *et al.*

**Defendants.**

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
HER MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW the Plaintiff, VICTORIA FRAZIER ("Ms. Frazier") by counsel, and for

her Memorandum in Support of her Motion for Partial Summary Judgment, she states as follows:

**INTRODUCTION**

Since January 2006, Ms. Frazier has resided at her home located at 1330 Mountain View

Road, Stafford, Virginia 22554 ("home"). Ms. Frazier resides at her home with her husband,

daughter and granddaughter. Although Ms. Frazier is on the title of the home with her husband,

Harry Frazier, she has never taken out any mortgages or loans on the home. Ms. Frazier never

signed any note or any other agreement obligating her to pay Fremont Investments & Loan,

Defendant Litton Loan Servicing ("Defendant" or "Litton"), or anyone else for a mortgage on

the home.

1

Despite having never taken out a mortgage, in August 2010, Ms. Frazier obtained copies of her credit reports and learned that Litton was falsely reporting a delinquent, $657,000.00 mortgage in her name to all three of the credit bureaus. Even worse, the August 2010 credit reports also indicated that the mortgage loan was in foreclosure, which is perhaps the most derogatory information that can appear in a credit file.

Ms. Frazier sent written notices to all three credit bureaus where she disputed that she was obligated on the Litton mortgage loan and requested the credit bureaus conduct an investigation into the dispute by contacting Litton to confirm she was not responsible for the mortgage loan. Defendant had knowledge and documentation in its possession to indicate that Ms. Frazier was not liable for the mortgage loan. Despite this, Defendant failed to conduct any investigation into Ms. Frazier's dispute and simply verified that the mortgage loan belonged to Ms. Frazier.

To this date, Defendant has refused to admit the inaccuracy of its credit reporting, despite admissions from its own employees that the credit reporting was done in error. Defendant still maintains that Ms. Frazier applied for, opened and signed its loan, was past due, in default, indebted for over a half a million dollars and that involuntary foreclosure had been initiated, based on their misguided reliance of Ms. Frazier's signature on the Deed of Trust. Defendant refuses to admit that its reporting was inaccurate because doing so would end its only technical liability defense remaining in this case.

Despite Defendant's need for some sort of legal defense, there are no disputed material facts concerning whether Ms. Frazier was or was not obligated on the mortgage; therefore,

resolution of this issue is a question of law and one best suited for summary judgment. *Alabran v. Capital One Bank,* No. 3:04CV935, 2005 WL 3338663 (E.D. Va. Dec. 8, 2005) (granting summary judgment on the issue of accuracy because there were no disputed facts whether plaintiff was or was not obligated on the subject indebtedness). Moreover, Defendant's other possible defense – that it actually complied with the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2(b) and attempted to conduct a "reasonable investigation"[1] – is impossible. If the court does not grant summary judgment, the Defendant's continued unwillingness to open its eyes and accept its exposure will continue to prevent a mediated alternative to trial.

## LOCAL RULE 56 STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56(B), Ms. Frazier states that the following material facts are undisputed:

1.      Ms. Frazier resides at 1330 Mountain View Road, Stafford, Virginia 22554 (the "home") with her daughter, granddaughter and husband, Harry Frazier ("Harry Frazier"). *Declaration of Victoria L. Frazier* (Frazier Decl.), Exhibit "A" ¶ 1.

2.      Ms. Frazier is on the title of the home with her husband. However, Harry Frazier is the only person that signed the Adjustable Rate Note ("Note") with Fremont Investment & Loan ("Fremont"). A true and accurate copy of the Note is attached as Exhibit B.

3.      Under the terms of the Note, Fremont loaned Harry Frazier $657,000.00. *Id*. Ms. Frazier never signed the Note, nor agreed to pay any loan on the home. *Frazier Decl.*, Exhibit A, ¶ 4.

---

1 *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 (4th Cir. 2004) ("The key term at issue here, 'investigation,' is defined as '[a] detailed inquiry or systematic examination.' *Am. Heritage Dictionary* 920 (4th ed.2000); *see Webster's Third New Int'l Dictionary* 1189 (1981) (defining 'investigation' as 'a searching inquiry'). Thus, the plain meaning of 'investigation' clearly requires some degree of careful inquiry by creditors.")

4.      The Note consists of four pages -- each of which was initialed by Harry Frazier -- except for the final page, which contains his full signature. Note, Exhibit B, ¶¶1-4.

5.      Ms. Frazier never signed her initials on any page of the Note, nor did she sign the last page with her full signature. *Id.*

6.      The Note was also supplemented by a Balloon Payment Rider to Note ("Rider Note"). The Rider Note was endorsed on the same day as the Note, and signed solely by Harry Frazier. A true and accurate copy of the Rider Note is attached as Exhibit C.

7.      Ms. Frazier handled the household finances for her family. However, Litton would never allow her to make her husband's monthly mortgage payments over the telephone because she was not on the account. In fact, Litton would not even communicate with Ms. Frazier regarding the account unless Harry Frazier was on the telephone and authorized Litton to speak with her.  *Frazier Decl.*, ¶¶ 10-11.

8.      In Todd Condron's undisputed expert report, he opines that Harry Frazier is the only party who bears any personal liability on the underlying debt subject to the Note. Mr. Condron explains that Ms. Frazier was required to sign the Deed of Trust to acknowledge that her husband was taking out a mortgage and the property would secure payment of the mortgage.  Mr. Condron goes on to opine that "in no manner did [Ms. Frazier] acknowledge, convey or create a liability on her person for this debt through the closing of this refinance. Of this, I am absolutely certain." Fed. R. Civ. P. 26(a)(2) *Expert Witness Report of Thomas Condron* ("*Condron Expert Report*"), Exhibit D, at 5.

9.      In August 2010, Ms. Frazier I obtained copies of her credit reports and learned for the first time that Litton reported a mortgage in her name to Experian, Equifax and Trans Union. *Frazier Decl.*, at ¶ 12.

4

10.     Specifically, Litton reported that Ms. Frazier had a mortgage for $657,000.00, that she was delinquent on this mortgage, owed a significant amount of money to Defendant and that Plaintiff was in foreclosure. *Id*. at ¶ 14.

11.     After reviewing her credit reports, Ms. Frazier called Litton multiple times to resolve the credit reporting error. However, no one from Litton would speak with her because she was not on the account. *Id*. at ¶ 15.

12.     On February 2, 2011, Ms. Frazier sent notarized written letters to Experian, Equifax and Trans Union disputing the accuracy of the Litton account on her credit report. *Id*. at ¶ 17, Exhibit E.

13.     In her February 2, 2011, correspondence, Ms. Frazier wrote:

- She had not signed the mortgage note with Litton;

- The Litton account was not hers;

- The mortgage was solely in her husband's name; and

- She offered to provide a copy of the Note.

Exhibit E

14.     After her first dispute letter, Equifax deleted the Litton account on Ms. Frazier's credit report. *Frazier Decl*., at ¶ 18.

15.     Trans Union and Experian, however, verified that Defendant's reporting of the mortgage account was accurate. *Id*. at ¶ 19.

16.     On March 18, 2011, Ms. Frazier sent another dispute letter to Trans Union and Experian enclosing her February 2, 2011, correspondence and requesting that they conduct a proper investigation. *Id*. ¶ 21, Exhibit F.

17.     Again, Trans Union and Experian, however, refused to delete the Defendant's reporting of the mortgage account. *Frazier Decl*., at ¶¶ 21-22.

18.     Defendant knew that Ms. Frazier was not obligated to pay the mortgage or any other loan on the home. *Id*. ¶ 24. This knowledge is evidenced by the following:

- Harry Frazier was the only signature on the Note, *Frazier Decl.*, ¶ 4, Exhibits B & C;

- Defendant refused to allow Ms. Frazier to make mortgage payments on her husband's loan without his authorization, *Frazier Decl.*, ¶¶ 10-11;

- Defendant refused to speak with Ms. Frazier when she sought to dispute the inaccurate credit reporting directly to the Defendant, *Id*. at ¶ 15; and

- Admissions by Defendant's own employees on March 25, 2011, *Macias Decl.,* Exhibit G.

19.     Nevertheless, Defendant still reported that the mortgage was Ms. Frazier's account. *Frazier Decl.*, ¶ 24.

20.     Despite the numerous direct communications and multiple FCRA disputes, Defendant never removed or corrected its inaccurate credit reporting. *Id*. at ¶ 24.

21.     If Defendant would have conducted *any* investigation in response to Ms. Frazier's credit disputes, they would have realized that the credit reporting was inaccurate. *See generally, Macias Decl.*

## STANDARD OF REVIEW

**Revised Rule 56 properly provides a mechanism for Partial Summary Judgment.**

Partial summary judgment shall be granted when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). 2

---

2 Amendments to Fed. R. Civ. P. 56 were effective December 1, 2010.  Concerning former Rule 56(d), the comments of the Judicial Conference on the rules changes explain, among other things, that the amendments to Rule 56 are "to improve the procedures for presenting and deciding summary-judgment motions, to make the procedures more consistent across the

Under the new Rule 56, the movant must support its factual position by citation to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A). This represents no significant change from the standard this court has followed in resolving motions for summary judgment prior to adopting of the new rule. *See Ratledge v. Science Appl. Int'l Corp.,* 1:10-CV-239, 2011 WL 652274 (E.D. Va. Feb. 10, 2011)(relying on established summary judgment standards where "[t]he inferences drawn from the underlying facts must be construed in the light most favorable to the nonmoving party" and "Rule 56 mandates that summary judgment be entered against a party 'who fails to make a showing sufficient to establish the existence of an element essential to that party's case.'")(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) and quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

Under the new version of Rule 56(c)(1)(B), the movant may demonstrate that there is no dispute of a material nature, including by showing that a non-movant cannot produce admissible evidence to establish or controvert a fact. This is consistent with the established case law, for

---

districts, and to close the gap that has developed between the rule text and actual practice . . . [but] not intended to change the summary-judgment standard or burdens." One of these "salient changes" was to also "explicitly recognize that 'partial summary judgments' may be entered." *Summary Of The Report Of The Judicial Conference Committee On Rules Of Practice And Procedure*, recommended September 9, 2009, approved April 28, 2010; implemented December 2, 2010, pursuant to the Rules Enabling Act, 28 U.S.C. § 2072.

7

example, when the non-moving party will bear the burden of proof at trial, the moving party's burden can be met by "pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp..* 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 587.

In this case, it is the party moving for summary judgment, Ms. Frazier, who bears the burden of proof at trial. Ms. Frazier must establish there is no credible dispute as to the facts. With regard to the Defendant's defense of accuracy and that they conducted a reasonable investigation, the movant has established the material facts necessary to prevail at trial. Ms. Frazier's undisputed facts are based on the admissions of Defendant's own employees, un-rebuttable expert witness testimony and documents produced by the Defendant itself.  With the existence of such evidence, the non-movant may not merely rest on conclusory allegations but must present evidence demonstrating that there is a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.,* 364 F.3d 135, 140 (3d Cir. 2004); s*ee also Noell Crane Sys. GmbH v. Noell Crane & Serv., Inc.*, 677 F. Supp. 2d 852, 868 (E.D. Va. 2009)(explaining that "a party who raises an affirmative defense but fails to make a sufficient showing on an element of that defense may not defeat summary judgment for the plaintiff").

For the dispute to be considered genuine, the evidence must demonstrate that a reasonable jury could return a verdict for the non-moving party. *Addison v. Brinkman*, No. 3:10cv182-LO, 2011 WL 587005, at 8 (E.D.Va. Feb. 8, 2011).  The court may not weigh the

evidence or attempt to determine the truth of the matter, but only to determine whether the

evidence of record is such that a reasonable jury could return a verdict for the non-moving party.

*Id.*

## ARGUMENT

### A.     Overview

Congress enacted the FCRA in 1970 as Title VI of the Consumer Credit Protection Act,

15 U.S.C. §§ 1601-1693r ("CCPA"), its omnibus act regulating the consumer credit industry.

An overarching, core CCPA theme is that prudent dissemination of accurate credit information is

essential to maintain the vitality of the credit granting system in a competitive and open

marketplace to insure the health of the nation's multi-trillion dollar consumer credit economy

and the wellbeing of all its participants, creditors and consumers alike.3  Congress thus made the

following formal findings in adopting the FCRA:

> The banking system is dependent upon fair and accurate credit reporting.  Inaccurate
> credit reports directly impair the efficiency of the banking system, and unfair credit
> reporting methods undermine the public confidence which is essential to the continued
> functioning of the banking system. § 1681(a)(1).

Congress enacted the FCRA with the express purpose to enable credit grantors and others

to be in the best position to make reliable lending and other business decisions.  § 1681(a) and

(b).  Likewise, the Truth in Lending Act, Title I of the CCPA, establishes the corresponding

principle that consumers are best served through their own "informed use of credit."  15 U.S.C.

---

3  Total outstanding consumer credit as of November 2011 was nearly $2.5 trillion.  See
http://www.federalreserve.gov/Releases/G19/Current, last visited February 10, 2012.

§ 1601(a).  "Congress enacted the Truth in Lending Act in part because it believed consumers

would individually benefit not only from the more informed use of credit, but also from

heightened competition which would result from more knowledgeable credit shopping."  *Till v.*

*SCS Credit Corp.*, 541 U.S. 465, 482 (2004) (quotation and footnote omitted).  The Supreme

Court stated the guiding principle of this congressional philosophy nearly 40 years ago: "[B]lind

economic activity is inconsistent with the efficient functioning of a free economic system such as

ours."  *Mourning v. Family Publication Serv., Inc.*, 411 U.S. 356, 364 (1973).  Simply put, the

viability of our credit economy depends on accurate information; Congress designed the FCRA

to increase that accuracy.

In 1996 Congress amended the FCRA, Pub.L. 104-208 (Sept. 30, 1996), as explained in

the Senate Report:

> Currently, the FCRA contains no requirements applying to those entities which
> furnish information to consumer reporting agencies.  Section 413 imposes certain
> obligations upon those furnishers of information to consumer reporting agencies.
> The Committee believes that bringing furnishers of information under the
> provisions of the FCRA is an essential step in ensuring the accuracy of consumer
> report information.

S. Rep. 104-185, 104th Cong., 1st Sess. 49 (1995); see *Nelson v. Chase Manhattan Mortgage*

*Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002).  Among the changes that Congress enacted was

§ 1681s-2, which imposes on those furnishers of information, such as Litton, detailed and

specific responsibilities.

This Court has long ago provided one of the earliest and most complete summaries of this

FCRA "furnisher" section, which governs the present case, cited verbatim:

The FCRA places various requirements on consumer credit reporting agencies, furnishers of credit information to consumer credit reporting agencies, and users of consumer credit reports. These requirements are enforced by civil liability statutes and, depending on the statutes implicated, may be enforced by either appropriate government officials or private individuals and entities. Sections 1681n and 1681o are examples of the latter. Section 1681n provides that "any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of any damages sustained by that consumer ... or not less than $1000" plus reasonable attorney's fees. 15 U.S.C.S. § 1681n. Section 1681o establishes similar liability for any person who negligently fails to comply.

Section 1681s–2 may be functionally split into two distinct subparts. First, subsections (a), (c), and (d), delineate the following responsibilities. Subsection (a) imposes duties upon furnishers of credit information to provide consumer reporting agencies with accurate information. Subsections (c) and (d), limit the remedies available for violations of subsection (a). In particular, subsection (c) eliminates the availability of direct remedies to consumers by making Sections 1681n and 1681o inapplicable to violations of subsection (a). Subsection (d) provides that the requirements imposed by subsection (a) are only enforceable by government officials.

*Ayers v. Equifax Info. Servs.*, No. 3:03CV551, 2003 WL 23142201 (E.D. Va. Dec. 16, 2003). As currently enacted, § 1681s-2(b) requires:

**(b) Duties of furnishers of information upon notice of dispute**

**(1) In general**

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

**(A)** conduct an investigation with respect to the disputed information;

**(B)** review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

**(C)** report the results of the investigation to the consumer reporting agency;

**(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

**(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

> **(i)** modify that item of information;
> **(ii)** delete that item of information; or
> **(iii)** permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b). Ms. Frazier alleges that Defendant violated these provisions.

Fair Credit Reporting Act cases based on a furnisher defendant's failure to investigate and correct credit information nearly always required proof of the same narrow set of liability elements: (1) Was an "investigation" conducted? (2) Was the investigation "reasonable?" (3) Was the disputed information "inaccurate?" (4) Did the furnisher defendant correctly respond to the dispute after the investigation process? While some of these questions remain jury questions, two of the four elements are no longer jury questions because there is no doubt that Defendant (1) did not conduct a reasonable investigation and (2) the information on Ms. Frazier's credit report was

inaccurate. *See Johnson,* 357 F.3d at 431-32; *Robertson v. J.C. Penney Co., Inc.*, No. 2:06CV3KSMTP, 2008 WL 623397 (S.D. Miss. Mar. 4, 2008) (Granting summary judgment for consumer when furnisher's investigation consisted of merely comparing the ACDV to its computer records); *See also Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1071 (9th Cir. 2008) ("A reinvestigation that overlooks documents in the court file expressly stating that *no* adverse judgment was entered falls far short of this standard. On our own motion, therefore, we grant summary judgment[.]"); *See also Alabran v. Capital One Bank*, No. 3:04CV935, 2005 WL 3338663 (E.D.Va. Dec. 18, 2005).

Accordingly, summary judgment on these core elements with facts that are not and cannot be disputed, and thus are established, will provide a clear, concise and efficient tableau upon which to present to a jury the material facts that remain in dispute. Moreover, summary judgment would reduce the large range of discovery and evidence that currently confronts the Parties, reduce the trial to one day and reduce the vast gap between the Parties' understanding of the governing law, which would enable each side to rationally resolve the cause without further judicial notice.

**B. As a matter of law, Defendant did not conduct a lawful investigation in response to Ms. Frazier's FCRA disputes.**

Ms. Frazier's primary FCRA claim under § 1681s-2(b) is for Defendant's failure to conduct a reasonable (or any) investigation of her many disputes conveyed through the national consumer reporting agencies. The leading case in this regard is the Fourth Circuit's *Johnson v. MBNA Am. Bank, NA,* 357 F.3d at 431-32 (affirming jury verdict before Judge Williams for a

13

furnisher violation of § 1681s-2(b)).  Johnson and its progeny have well-established that the

§ 1681s-2(b)(1)(A) directive to furnishers to "conduct an investigation with respect to the

disputed information" required a "reasonable investigation," that is, a "careful" or "searching

inquiry," as opposed to a "superficial" one, "to determine whether the disputed information can

be verified." *Johnson v. MBNA America Bank, NA*, 357 F.3d at 430-31.  The Courts of Appeals

continue to unanimously follow this "reasonable investigation" standard.  *Chiang v. Verizon

New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010); *Gorman v. Wolpoff & Abramson, L.L.P.*, 584

F.3d 1147, 1157 (9th Cir. 2009). *See also Robertson v. J.C. Penney Co., Inc.*, 2008 WL 623397.

This standard for an investigation is a rigorous one, requiring more than a superficial data

conformity check of comparing the CRA identifying information for the disputed account the

furnisher's computer data (requiring more than matching social security number, date of birth

and name).  In a more recent decision adopting the Fourth Circuit's *Johnson* standard, the Court

of Appeals for the Ninth Circuit explained:

> The Fourth Circuit's reasoning in *Johnson* is entirely persuasive. **By its ordinary meaning, an "investigation" requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute.** Moreover, like the Fourth Circuit, we have observed that "a primary purpose for the FCRA [is] to protect consumers against inaccurate and incomplete credit reporting." *Nelson,* 282 F.3d at 1060. **A provision that required only a cursory investigation would not provide such protection; instead, it would allow furnishers to escape their obligations by merely rubber stamping their earlier submissions, even where circumstances demanded a more thorough inquiry.**

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1155-56 (9th Cir. 2009) (emphasis

added).

14

Generally, it has been considered to be a jury question whether the furnisher has instituted and complied with the requirement to implement and follow reasonable procedures. *Dalton v. Capital Assoc. Indus., Inc*., 257 F.3d 409, 416-17 (4th Cir. 2001) ("The issue of whether the agency failed to follow 'reasonable procedures' will be a 'jury question[ ] in the overwhelming majority of cases."); *Guimond v. Trans Union Credit Info. Co,* 45 F.3d 1329, 1333 (9th Cir. 1995). *See also Andrews v. TRW Inc.,* 225 F.3d 1063, 1068 (9th Cir. 2000) ("'It would normally not be easy for a court as a matter of law to determine whether a given procedure was reasonable in reaching the very high standard set by the statute ....'"). However, when a plaintiff carries her burden of proving that the defendant's procedures were unreasonable because they provide no avenue to correct a known inaccurate report and no meaningful investigation, then no reasonable jury could ever find in favor of the defendant. *Johnson*, 357 F.3d at 431-32; *Saunders*, 526 F.3d at 148-49; *see also Addison* 2011 WL 587005, at *8-9 (describing the circumstances where, on summary judgment, a court may resolve factual disputes when the non-moving party's evidence simply "strains credulity").

In this case, the actual degree or quality of investigation is not an issue. Rather, Defendant either did not undertake any investigation, or the investigation was so poor that it overlooked documents in Defendant's possession expressly indicating the mortgage loan was not in Ms. Frazier's name. At all relevant times, Defendant was in complete and utter control of all information necessary for it to know that the Note was signed by Harry Frazier – and no one else. This is even more apparent given the fact that

once the Defendant's own employee looked at the documentation, she was easily able to ascertain that Ms. Frazier was not obligated on the mortgage. Thus, it is factually impossible for Defendant to produce any evidence that it engaged in a meaningful, searching investigation required under the FCRA and *Johnson* when an investigation of documents within its possession would have been sufficient evidence to establish that Ms. Frazier was not obligated to pay the mortgage account which is the subject of this litigation.

Despite the fact that Defendant had the documents in its own possession, in order to establish liability under the FCRA, Ms. Frazier had to dispute the inaccurate reporting, not to Defendant, but to the CRAs. This she did multiple times. In her dispute letters to the CRAs, Ms. Frazier expressly indicated that the Litton account on her credit reports was solely in her husband's name. The CRAs all sent ACDVs to Defendant reflecting this information. If Defendant had a procedure by which it would have conducted even a minimal inquiry in response to Ms. Frazier's first dispute, either directly to it or to the CRAs, Ms. Frazier's consumer report would have been corrected and the derogatory information deleted as required by the FCRA and the settled law of the Fourth Circuit. No reasonable jury could find otherwise. *Addison* 2011 WL 587005, at 8-9; *Bell Microproducts, Inc.*, 20 F.Supp.2d at 941.

**C. Defendant's credit reporting was inaccurate. Ms. Frazier was not the maker of the mortgage note.**

Defendant reported to the "Big Three" consumer reporting agencies – Equifax, Trans Union and Experian – that it had verified that Ms. Frazier was the person responsible for opening and paying the subject mortgage. Although there is no doubt that Defendant failed to conduct a meaningful investigation, this would not matter if what was ultimately "blindly" verified was accurate regardless of the quality of the investigation. Whether a furnisher gets the correct answer by "dumb luck" or through lawful investigation, an accurate answer precludes a consumer from prevailing in an § 1681s-2(b) case. Thus, a consumer must show (either as a liability or a damage element – courts see it both ways) that the challenged reporting was, in fact, accurate. *Beattie v. Nations Credit Fin. Services Corp.*, 69 F. App'x 585, 591 (4th Cir. 2003) (stating "[a]lso, as we have stated previously, the information NationsCredit reported to the credit bureaus was accurate … [t]herefore, the Beatties have failed to show that the FCRA provides an actionable duty[.]").

Such a decision is one best suited for summary judgment.  In *Alabran v. Capital One Bank*, Judge Dohnal granted the consumer-plaintiff's motion for partial summary judgment in an FCRA § 1681s-2(b) case arising from a wife's unauthorized use of her husband's identity (they were estranged as of the date the case was filed).  In such a fact pattern, which is weaker than the one now before the Court, Judge Dohnal held:

> The court concurs that there are no disputed material facts remaining after resolution of the Defendant's motion concerning whether the Plaintiff was or was not obligated on the subject indebtedness such that the resolution of the issue of the accuracy of the information is a question of law that would have to be

resolved by the court anyway at some point. Accordingly, the motion will be entertained and GRANTED for the reasons already discussed.

*Alabran v. Capital One Bank*, No. 3:04CV935, 2005 WL 3338663 (E.D. Va. Dec. 8, 2005).4

There is no question in this case that Defendant's reporting was not accurate. It is a simple question – did Ms. Frazier apply for and agree to pay for the mortgage? The answer is even simpler: No, she did not. Ms. Frazier does not again need to restate the same details. But the simplest accuracy facts are these: Ms. Frazier – by affidavit and discovery in this case – provided unqualified testimony that she never signed, nor agreed to pay the mortgage note which is the subject of this litigation.

In addition, documents supplied by the Defendant, notably, the mortgage Note, is solely in the name of Harry Frazier, Ms. Frazier's husband. Any misguided belief by the Defendant that Ms. Frazier's signature on the Deed of Trust, Truth in Lending disclosure and Notices of the Right to Cancel make her liable for her husband's mortgage is contradicted by the plain language in both the documents themselves as well as the expert report of Todd Condron. Most persuasive are the Admissions by the Defendant's own employees when asked to investigate whether Ms. Frazier is on the mortgage loan, and they conclude she is not.

---

4 In *Mullins v. Equifax Information Services, LLC*, Judge Payne granted the consumer-plaintiff's motion in limine and request for a jury instruction advising the jury that: "*Trans Union reported that Ms. Mullins was contractually responsible for the credit card accounts in dispute here. You are instructed that Trans Union was inaccurate in reporting that Ms. Mullins was contractually responsible for these accounts.*" 3:05CV888, Jury Instruction 16.

18

Defendant's credit reporting was objectively inaccurate. It is factually impossible for Ms. Frazier to have been delinquent or in default on a loan that she never had, a fact that cannot be possibly in dispute. Therefore, Ms. Frazier is entitled to summary judgment on this important element of her claim.

## CONCLUSION

Accordingly, for the reasons stated fully herein, the Plaintiff, Victoria Frazier, asks the Court to enter Partial Summary Judgment on two elements:  (1) that Litton's reporting about Ms. Frazier was inaccurate; and (2) that Litton did not perform a reasonable investigation.  Ms. Frazier respectfully requests that the court grant this and such other relief it finds just and appropriate.

Respectfully submitted,

**VICTORIA L. FRAZIER**

By_____/s/_____
Susan Rotkis, Esq. VSB #40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, Virginia 23601
(757) 930-3660
(757) 930-3662 facsimile
srotkis@clalegal.com

Kristi Cahoon Kelly, VSB #72791
SUROVELL ISAACS PETERSEN & LEVY, PLC
4010 University Drive, Second Floor
Fairfax, Virginia 22030
(703) 251-5400
(703) 591-9285
kkelly@siplfirm.com

Leonard A. Bennett, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, Virginia 23601
(757) 930-3660
(757) 930-3662 facsimile
lenbennett@cox.net

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify on this 10th day of February, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John C. Lynch (VSB No. 39267)
Ethan G. Ostroff (VSB No. 71610)
Virginia B. Flynn (VSB No. 79596)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7765
Facsimile: ( 757) 687-1504
Email: john.lynch@troutmansanders.com
Email: ethan.ostroff@troutmansanders.com
Email: Virginia.flynn@troutmansanders.com
*Counsel for Defendant Litton Loan Servicing LP*

_____/s/_____
Susan Rotkis, Esq. VSB #40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, Virginia 23601
(757) 930-3660
(757) 930-3662 facsimile
srotkis@clalegal.com

20