LAW OFFICES OF

# Leggett, Simon, Freemyers & Lyon PLC

### A PROFESSIONAL LIMITED LIABILITY COMPANY

E. Sheldon Leggett                                              Jonathan E. Lyon
Marcus Simon         **11718 BOWMAN GREEN DRIVE, STE 110A**         Michele R. Freemyers
Todd E. Condron               **RESTON, VIRGINIA 22190**
     Associate: Sara Rodriguez

## Report of Examination

DOCUMENTATION EXAMINED:

1. "Deed of Trust" dated June 26, 2006
2. "Adjustable Rate Note" dated June 26, 2006
3. "Truth-in-Lending Disclosure" Statement dated June 26, 2006
4. "Notice of Right to Cancel" dated June 26, 2006 (2 copies)

ISSUE:

       These documents derive from the June 26, 2006 Settlement ("Settlement") whereupon Harry L. Frazier ("Frazier") and Victoria Meredith ("Meredith") refinanced their existing mortgage and encumbered their Property at 1330 Mountain View Road, Stafford, VA 22554 (hereinafter "Property") with a $657,000 mortgage lien secured by the original Lender: "Fremont Investment & Loan" also known as "Note Holder". Frazier was the sole borrower underwritten on the loan, and both Frazier and Meredith were on title to this Property.

       At your request, I have reviewed the above documentation to determine if the documents are and were properly executed and signed in their capacity as loan documents related to a residential refinance transaction, and as loan documents utilized to secure a Deed of Trust against a Property as a secured first-position lien. In particular, I am reviewing the documentation in light of the fact that two individuals hold title to the Property encumbered by said resulting lien, yet only one of the title-holders was underwritten for the underlying loan as a sole borrower.

RESULTS:

       As a primer, the documentation appears to be the result of a refinance of an existing mortgage secured by a lien upon the above-referenced Property. The Deed of Trust document bears the handwritten note: *"The purpose of this Deed of Trust is to refinance the terms of an existing [page cutoff further language in review]"*.

       A Settlement Agent carries two separate responsibilities in closing a refinance of an existing mortgage resulting in a new loan secured by a recorded Deed of Trust as a mortgage lien against the Property. The closing of this mortgage will include a bifurcated process of:
1. Creating personal liability on the debt by way of an enforceable Promissory Note; and,
2. Creating a lien to secure the debt against the Property.

       First, in the interests of creating a lien to secure the debt against the Property, the Settlement Agent acts as an issuer of insurance as an approved agent of a title insurance company who will issue a Lender's title insurance policy ("Title Policy") at closing. The

1

**EXHIBIT**

**D**

Case 3:11-cv-00497-JRS Document 23-1 Filed 01/10/12 Page 2 of 35 PageID# 106

purpose of the Title Policy, and the responsibility of the Settlement Agent in this role, is to insure the primary lien position status of this Deed of Trust on this Property for the lender/beneficiary. Any loss suffered by the lender from an inability to enforce their lien and secured interest against the Property would result in a claim against the Title Policy, and against the Settlement Agent as well.

Secondly, in the interests of creating personal liability on the underlying debt by way of an enforceable Promissory Note, the Settlement Agent acts as a fiduciary for the lender at closing. This role is defined by Virginia Code Sec. 55-525.11, which dictates the duties and responsibilities in the handling and final disbursement of all funds received from the lending company. The role is also defined by the Settlement Agent's duty of strict compliance with the Final Lender's Instructions sent to the Settlement Agent by Lender for closing. In this role, the Settlement Agent has a sacrosanct duty to the lender to ensure that the loan funds are properly handled, that the underlying debt is properly enforceable by execution of the loan documentation, and that all the Final Loan Instructions are followed as given.

SETTLEMENT AGENT AS ISSUER OF TITLE INSURANCE TO LENDER:

In order to issue a Title Policy to the lender, the Settlement Agent must conduct a thorough title examination to determine if there exist any bars to the lender's ability to garner proper lien position and security. Part and parcel of this examination is determining all those parties-in-interest who hold title to the Property. Regardless of the number of individuals who are underwritten as the borrower(s) on the loan, all those who hold title to the Property, in any percentage or capacity, must join in the refinance/mortgage closing to convey their consent to the security and lien held by the Lender. Because the nonborrowing parties who hold title to the Property must consent to any lien on the Property, the exclusion of these parties would cause the lien to fail. The document recorded with the applicable land records to secure the lender's mortgage lien on the Property is the Deed of Trust. Thus, all those who are on title to the Property must sign the Deed of Trust, in its entirety, at closing.

With that in mind, the only manner through which a Settlement Agent can offer a Title Policy at closing is by having all those who are on title sign the Deed of Trust. Without the signature and participation of those in title, the Deed of Trust will fail as a secured interest and lien. This will result in a claim on the Title Policy and a claim against the Settlement Agent. Thus, in this case, the Settlement Agent was required to obtain both Frazier and Meredith's signatures on the Deed of Trust in its entirety in order to ensure that the lien was properly secured by the Note Holder/beneficiary and so the Title Policy could be issued.

***[It is important to note that the Deed of Trust in this case indicates on Page 3 that an "Adjustable Rate Rider" and "Balloon Rider" must be executed with security instrument. So, these two documents are a portion of the entire security instrument. Thus, the Settlement Agent must ensure that both Frazier and Meredith sign these riders as part of the Deed of Trust, or again, the lien could fail.]*

SETTLEMENT AGENT IN THE ROLE AS FIDUCIARY FOR LENDER:

The Settlement Agent is given the responsibility to ensure that the underlying debt secured by the Deed of Trust is properly enforceable against the Borrower, that all loan documents are properly executed, and that the Final Loan Instructions are strictly adhered to.

The Adjustable Rate Note ("Note") and Deed of Trust ultimately work together to form a secured mortgage interest and lien on the Property. But, these two documents are two

Case 3:11-cv-00497-JRS Document 23-1 Filed 01/10/12 Page 3 of 35 PageID# 107

completely separate instruments with two different effects. The Note will confirm and establish the personal liability on the debt. The Deed of Trust will confirm and establish the lien upon the Property, once properly recorded. This is cemented in the fact that the Note states in Paragraph 11 "Uniformed Secured Note" : *"In addition to the protections given to the Note Holder under this Note...a Deed of Trust...dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note."* (underlined by author for emphasis). The underlined portion illustrates that the Deed of Trust has a separate purpose outside of the Note, as it only exists as security for failure of the borrower's obligations under the Note. So, the language quoted illustrates separate rights under the Note, and separate rights under the Deed of Trust.

I point out the above to note that the signature of Meredith on the Deed of Trust is done only to ensure that the lien is properly secured to the Property. This derives from the first role of the Settlement Agent as title insurer. However, the signature of the nonborrowing party to the Deed of Trust has no bearing on the Settlement Agent's duty to ensure that the underlying debt is properly enforceable. The duty of the Settlement Agent in solidifying the underlying debt as enforceable is complete based upon one task: the proper signature and execution of the Note by the named borrower. So, all nonborrowing parties who hold an interest in title to the Property are not required to sign the Note. That is why only Frazier's initials and signature are on the Note.

***[It is important to note that the Note contains language on Page 1 indicating that a "Balloon Payment Rider" is attached and "made a part hereof". So, this rider is made part of the debt obligation instrument known as the Note. Without its inclusion, the Note could be deemed unenforceable. However, because it is part of the Note only, which pertains to the personal liability on the debt and not the lien, the Settlement Agent only needs Frazier's signature on this rider.]*

TWO ADDITIONAL DOCUMENTS:

There are two additional documents that always must be signed by the nonborrowing parties who hold an interest in title to the Property. These documents are the Truth-in-Lending Disclosure Statement ("TIL") and the Notice of right to Cancel ("Notice"). As you will see below, the absence of the signature of the nonborrowing party who holds title could result in the debt being considered null and unenforceable by law. These two documents are government-mandated disclosures and do not create any personal liability on the debt.

The Settlement Agent has two duties to fulfill in the proper execution of the TIL and Notice. First, the Settlement Agent must follow the Final Lender's Instructions in the proper signing of these two documents. Secondly, the Settlement Agent must ensure that the underlying debt is properly established and enforceable.

Being a residential refinance of an principal dwelling, this closing carried with it a three-day right of rescission as mandated by Sec. 226.23 of the Federal Truth-in-Lending Act[ 15 U.S.C. 1601 et seq.]. As a loan document, The Notice simply confirms that all those who placed a "mortgage/lien/security" on the Property are aware of this right. Sec. 226.23 also states that in a loan closing where a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction. Thus, both Meredith and Frazier had the right to rescind this transaction. Thus, the Settlement Agent must require the signatures of both Meredith and Frazier on the Notice in following the Truth-in-Lending regulations, and in

following the Final Loan Instructions.

Furthermore, the Federal Truth-in-Lending Act also requires that all consumers who are able to rescind the transaction within the 3-business day right of rescission must sign the TIL. Thus, it is clear that both Meredith and Frazier must join in signing the TIL in order to follow proper protocol, Truth-in-Lending laws, and the Final Lender's Instructions.

Without both Frazier and Meredith's signatures on the Notice and TIL, the underlying debt could have been called into question and challenged as a violation of the Truth-in-Lending laws as stated. Thus, it is the primary duty of the Settlement Agent in this transaction to include both of their signatures on these documents to fulfill the Settlement Agent's responsibilities.

### CONCLUSION

Upon review of the relevant documentation, and drawing upon my experience in closing transactions under the exact same factual scenario, I can confirm that Harry L. Frazier is the only party who bears any personal liability on the underlying debt subject to the Note and secured by the Deed of Trust reviewed.

Victoria Meredith, as co-owner of the Property, joined in the signing of the Deed of Trust in order to secure lien rights against the Property for the Note Holder. Meredith also was joined in signing the TIL and Notice as illustrative of her ownership interest subject to the security interest as per federal guidelines.

But in no manner did Victoria Meredith acknowledge, convey or create a liability on her person for this debt through the closing of this refinance. Of this, I am absolutely certain.

TODD CONDRON
Attorney-at-Law

4

LAW OFFICES OF

# Leggett, Simon, Freemyers & Lyon PLC

**A PROFESSIONAL LIMITED LIABILITY COMPANY**

E. Sheldon Leggett
Marcus Simon
Todd E. Condron
  Associate: Sara Rodriguez

11718 BOWMAN GREEN DRIVE, STE 110A
RESTON, VIRGINIA 22190

Jonathan E. Lyon
Michele R. Freemyers

## Statement of Examination as Expert Witness

➢ A statement of the compensation to me made for the study and testimony in the case.
- o Todd Condron was paid at an hourly rate of $250 per hour for three hours of work completed: $750 for furnishing the report on this case.

➢ List of cases for previous four years where witness testified as expert at trial or deposition:
- o Not applicable.

➢ The witnesses qualifications including a list of all publications authored in the past 10 years
- o On multiple occasions over the past ten years, Witness has been engaged to represent both Purchasers and Sellers as counsel during sale and purchase transactions involving real property.
- o Witness has an ownership interest in a settlement agency, Ekko Title, L.C., which has seven offices in northern Virginia.
- o Witness serves as Partner in the law firm of Leggett Simon Freemyers & Lyon, PLC, which specializes in real estate based matters and representation in property resale closings.
- o Witness has over ten years' experience in closing residential property closings for:
  - ▪ Resale of existing property
  - ▪ New home construction
  - ▪ Commercial building/warehouse sale
  - ▪ Refinance of existing mortgage

8324 Knights Court
Clifton VA 20124

LR060029660

STAFFORD COUNTY CIRCUIT COURT

Return To:
Fremont Investment & Loan
P.O. Box 34078
FULLERTON, CA 92834-34078

Tax Map Reference #:

RPC/Parcel ID #:

Prepared By:
Barbara Licon

3000000127956

060021718

[Space Above This Line For Recording Data]

## DEED OF TRUST

MIN 1001944-3000127956-4

Re-Recording to include balloon payment Rider.

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by HARRY L FRAZIER and VICTORIA L MEREDITH joint tenants with common law rights of survivorship

, as

Borrower (trustor), to Long & Neyhart, P.C.
107 Church Street Northeast, Blackburgs, VA 24060

, as

Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc. as beneficiary.
Fremont Investment & Loan

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3047 1/01

-6A(VA) (0102).01

Page 1 of 15          Initials:

VMP MORTGAGE FORMS - (800)521-7291

The purpose of this Deed of Trust is to Refinance the terms of an existing



EXHIBIT
1

(A) "Security Instrument" means this document, which is dated June 26, 2006 together with all Riders to this document.

(B) "Borrower" is HARRY L FRAZIER and VICTORIA L MEREDITH joint tenants with common law rights of survivorship

Borrower is the trustor under this Security Instrument.

(C) "Lender" is Fremont Investment & Loan

Lender is a   CORPORATION
organized and existing under the laws of   CALIFORNIA
Lender's address is 2727 East Imperial Highway, Brea, CA 92821

(D) "Trustee" is Long & Neyhart, P.C.

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is 107 Church Street Northeast, Blackburgs, VA 24060
"Trustee" is  Long & Neyhart, P.C.

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is 107 Church Street Northeast, Blackburgs, VA 24060

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated June 26, 2006
The Note states that Borrower owes Lender Six Hundred Fifty-Seven Thousand  and 0/100ths
(U.S. $657,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than July 01, 2036          . The interest rate
stated in the Note is Eight  and 500/1000

percent (          8.500 %).
If this Security Instrument is an adjustable rate mortgage loan, this initial rate is subject to change in accordance with the attached Adjustable Rate Rider.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

-6A(VA) (0102).01                Page 2 of 18        Initials: _HF_              Form 3047  1/01
                                                              _VLM_

**(H)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [X] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "**Escrow Items**" means those items that are described in Section 3.

**(N)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

-6A(VA) (0102).01                     Page 3 of 18                     Initials: HF NLM                     Form 3047  1/01

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                    [Type of Recording Jurisdiction]
of Stafford
                                        [Name of Recording Jurisdiction]:

which currently has the address of 1330 MOUNTAIN VIEW RD

Stafford                                                                      [Street]
("Property Address"):                    [City/County], Virginia 22554        [Zip Code]

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

-6A(VA) (0102).01              Page 4 of 18           Initials: *HF*        Form 3047  1/01
                                                     *VLM*

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such

amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the

-6A(VA) (0102).01     Page 6 of 15     Initials: _____     Form 3047  1/01

payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or

-6A(VA) (0102).01         Page 7 of 15       Initials: _HF_      Form 3047  1/01

_VLM_

condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage

-6A(VA) (0102).01                    Page 8 of 15          Initials: HF  VLM          Form 3047  1/01

Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the

-6A(VA) (0102).01                    Page 10 of 15        Initials: HP        Form 3047   1/01

VLM

permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of

Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

-6A(VA) (0102).01                    Page 12 of 18              Initials: HF                Form 3047   1/01

VLM

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

-6A(VA) (0102).01     Page 13 of 16     Initials: HF     Form 3047 1/01

VLM

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Trustee shall release this Security Instrument, but only if the recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                          HARRY L FRAZIER         -Borrower

_____     _____ (Seal)
                          Victoria   Meredith     -Borrower

_____ (Seal)     _____ (Seal)
-Borrower                                        -Borrower

_____ (Seal)     _____ (Seal)
-Borrower                                        -Borrower

_____ (Seal)     _____ (Seal)
-Borrower                                        -Borrower

STATE OF VIRGINIA,   *Fairfax*                County, ss:

The foregoing instrument was acknowledged before me this  *6/26/06*                                by



**ALFRED T. LOVELACE**
**NOTARY PUBLIC**
**Commonwealth of Virginia**
**My Commission Expires**
**September 30, 2009**

*Harry L. Frazier & Victoria Meridith*

My Commission Expires:  *9/30/09*         *Alfred T. Lovelace*

Notary Public

-6A(VA) (0102).01          Page 15 of 16          Initials: *HF*          Form 3047  1/01

*VLM*

Commitment Number: 60001

## EXHIBIT A – LEGAL DESCRIPTION

Lot 16, Rolling Meadows Subdivision, as shown on subdivision plat entitled "Final Subdivision and Dedicated plat Rolling Meadows, Rock Hill Magisterial District, Stafford County, Virginia" made by H. Aubrey Hawkins and Associates, Ltd., dated October 17, 2002 and recorded in the Clerk's Office of the Circuit Court of Stafford County, Virginia, in Plat Book 41, at Pages 47-49

COMMONWEALTH OF VIRGINIA
COUNTY OF STAFFORD TO-WIT:
    IN THE OFFICE OF THE CLERK OF THE CIRCUIT COURT FOR
THE COUNTY OF STAFFORD, THE 5 DAY OF _____ 20 06
THE FOREGOING DEED INSTRUMENT WAS PRESENTED AND WITH
THE CERTIFICATE ANNEXED ADMITTED TO RECORD AT 10:22
AND INDEXED AFTER PAYMENT OF $ _____ TAX IMPOSED BY
§58.1-800., ET, SEQ.

TESTE:

BARBARA G. DECATUR, CLERK

# ADJUSTABLE RATE AND BALLOON PAYMENT RIDER
### (LIBOR Six-Month Index (As Published in The Wall Street Journal) – Rate Caps)

THIS ADJUSTABLE RATE AND BALLOON PAYMENT RIDER (the "Security Instrument Rider") is made this 26th day of June, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed ( the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Fremont Investment & Loan ("Lender") of the same date and covering the property described in the Security Instrument and located at:

### 1330 MOUNTAIN VIEW RD, STAFFORD, VA 22554
### (Property Address)

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY. THE NOTE IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE UNPAID PRINCIPLE BALANCE OF THE NOTE, TOGETHER WITH ALL UNPAID INTEREST AND LOAN CHARGES THEN DUE, IN A SINGLE BALLOON PAYMENT. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE NOTE AT THAT TIME. BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER NAMED IN THE NOTE, WILLING TO LEND BORRWER THE MONEY. IF BORRWER REFINACES THE NOTE AT MATURITY, BORRWER MAY HAVE TO PAY HIGHER INTEREST RATES ON THE NEW LOAN THAN ARE PAID ON THE NOTE. FURTHER, IF BORROWER REFINACES, BORRWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING WITH THE SAME LENDER.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.      INTEREST RATE AND MONTHLY PAYMENT CHANGES**

Section 2 of the Note provides for an initial interest rate of 8.500% and states that the interest rate of the Note will change in accordance with Section 4 of the Note. Borrower has executed a Balloon Payment Rider to Note (the "Note Rider") dated the same date as this Security Instrument Rider. Among other things the Note Rider modifies, amends, and supplements Section 3 and 4 of the Note to read, in their entirety, as follows:

BALARM1  01/04/06                Page 1 0f 4



3.   PAYMENTS
    (A)  TIME AND PALCE OF PAYMENTS
         I will pay principal and interest by making a payment every month.
         I will make my monthly payment on the first day of each month beginning on
         08/01/2006 . I will make these payments every month until I have paid all of the
         Principal and interest and any other charges described below that I may owe under this
         Note. Each monthly payment will be applied as of its scheduled due date and will be
         applied to interest before Principal. On  July 01, 2036 (which is called "Maturity
         Date"), I will pay the entire unpaid Principal balance of this Note, together with all
         accrued and unpaid interest and all charges due under this Note, in a single payment (the
         "Balloon Payment"). I understand and acknowledge that the Balloon Payment due on
         the Maturity Date will be much larger than a regular monthly payment and that the Note
         Holder has no obligation to refinance the Balloon Payment.

         I will make my monthly payments at 2727 East Imperial Highway, Bree, CA 92821
         or at a different place if required by the Note Holder.

    (B)  Amount of Monthly Payments
         Each of my initial monthly payments will be in the amount of U.S. $ 4,816.43 .  This
         amount may change.

    (C)  Monthly Payment Changes
         Changes in my monthly payment will reflect changes in the unpaid Principal of my loan
         and in the interest rate that I must pay. The Note Holder will determine my new interest
         rate and the changes amount of monthly payment in accordance with Section 4 of this
         Note.

4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
    (A)  Changes Dates
         The interest rate I will pay may change on the first day of  July   , 2008,  and may
         change on that day every sixth month thereafter. Each date on which my interest rate
         could change is called a "Change Date".

    (B)  The Index
         Beginning with the first Change Date, my interest rate will be based on an Index. The
         "Index" is the six month London Interbank Offered Rate ("LIBOR"), which is the
         average of interbank offered rates for six-month U.S. dollar-denominated deposits in the
         London market, as published in The Wall Street Journal. The most recent Index figure
         available 45 days before each Change Date is called the "Current Index".

         If the Index is no longer available, the Note Holder will choose a new index and adjust
         the Margin described below. The Note Holder will give notice of these changes.

    (C)  Calculation of Changes
         Before each Change Date, the Note Holder will calculate my new interest rate by adding
         Six and 226/1000     percentage point(s)  ( 6.226%)  (the "Margin") to the Current
         Index.  The Note Holder will then round  the result of this addition to the nearest one-
         eighth of  one percentage point (0.125%). Subject to the limits states in Section 4(D)
         below, this rounded amount will be my new interest rate until the next Change Date.

         The Note Holder will then determine the amount of the monthly payment that would be
         sufficient to repay the unpaid principal that I am expected to owe at the Change Date in
         full  on 7/01/2046  at my new interest rate in substantially equal payments. The result
         of this calculation will be the new amount of my monthly payment.

BALARM2  01/04/06            Page 2 Of 4              # F

                                                      V L M

"Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate And Balloon Payment Rider.

| | |
|---|---|
| _(signature)_ _____ (Seal) | _____ (Seal) |
| HARRY L FRAZIER - Borrower | - Borrower |
| | |
| _(signature)_ _____ (Seal) | _____ (Seal) |
| Victoria Meredith - Borrower | - Borrower |
| | |
| _____ (Seal) | _____ (Seal) |
| - Borrower | - Borrower |
| | |
| _____ (Seal) | _____ (Seal) |
| - Borrower | - Borrower |

BALARM4  01/04/06          Page 4 of 4          [Sign Original Only]

COMMONWEALTH OF VIRGINIA
COUNTY OF STAFFORD TO-WIT:
IN THE OFFICE OF THE CLERK OF THE CIRCUIT COURT FOR

INTEREST START DATE 6/29/06

# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)
### (First Business Day of Preceding Month Lookback)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

June 26, 2006                    BREA                    CA    92821
[Date]                           [City]                        [State]

1330 MOUNTAIN VIEW RD, Stafford, VA  22554

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 657,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  Fremont Investment & Loan

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      8.500 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS ** SEE BALLOON PAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF ****

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on  August 01, 2006
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  July 01, 2036                   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2727 East Imperial Highway, Brea, CA  92821

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 4,816.43               . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index (First Business Day of Preceding Month Lookback) - Single Family -Freddie Mac UNIFORM INSTRUMENT

VMP-815N (0404)                    Form 5520 3/04
VMP Mortgage Solutions (800)521-7291
Page 1 of 4                    Initials:

EXHIBIT
2

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of July, 2008 , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposit in the London market, as published in *The Wall Street Journal*. The most recent Index figure available 45 days first before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and 226/1000 percentage point(s) ( 6.226 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.500 % or less than 8.500 %. Thereafter, my interest rate will never be increased or decreased on any subsequent Change Date by more than 1.500 % from the rate of interest I have been paying for the preceding period. My interest rate will never be greater than 14.500 % or less than 8.500 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 7. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    **15**   **calendar days after** the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    **5.000**      **%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

#### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

-815N (0404)

Page 3 of 4

Form 5820 3/04

Initials: _AT_

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**  SEE BALLOON PAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF  **

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.



_____ (Seal)          _____ (Seal)
HARRY L FRAZIER                          -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                         -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                         -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                         -Borrower                                        -Borrower

[Sign Original Only]

# Balloon Payment Rider to Note
## (Adjustable Rate)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN, TOGETHER WITH ALL UNPAID INTEREST AND LOAN CHARGES THEN DUE, IN A SINGLE BALLOON PAYMENT. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THIS LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY HIGHER INTEREST RATES ON THE NEW LOAN THAN THE INTEREST RATE PAID ON THIS LOAN. FURTHER, IF YOU REFINANCE, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

THIS BALLOON PAYMENT RIDER TO NOTE (the "Note Rider") is made this 26th day of June, 2006 , and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") made by the undersigned (the "Borrower") in favor of Fremont Investment & Loan (the "Lender") and dated the same date as this Note Rider.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

1.   Payments
Sections 3 and 4 of the Note are modified, amended and supplemented to read, in their entirety, as follows:

"3.   PAYMENTS
(A)   Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the first day of each month beginning on 08/01/2006 . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. On July 01, 2036 (which is called the "Maturity Date"), I will pay the entire unpaid Principal balance of this Note, together with all accrued and unpaid interest and all charges due under this Note, in a single payment (the "Balloon Payment"). I understand and acknowledge that the Balloon Payment due on the Maturity Date will be much larger than a regular monthly payment and that the Note Holder has no obligation to refinance the Balloon Payment.

I will make my monthly payments at 2727 East Imperial Highway, Brea, CA 92821 or at a different place if required by the Note Holder.

(B)   Amount of Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 4,816.43 . This amount may change.

(C)   Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A)   Change Dates

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and 226/1000 percentage point(s) ( 6.226 %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on 7/1/2046 at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.500 % or less than 8.500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One and 500/1000 percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding six months. In any event, my interest rate will never be greater than 14.500 % and will never be less than 8.500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me such notice of any changes in my interest rate and monthly payment as may be required by law. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice. "

**2. Uniform Secured Note**

Section 11 of the Note is modified, amended and supplemented to read, in its entirety, as follows:

**"11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**(A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this

contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower. "

3.    **Effect of Note Rider**
    This Note Rider modifies, amends and supplements the Note. To the extent of any inconsistency between the provisions of this Note Rider and the provisions of the Note, the provisions of this Note Rider shall prevail over and supersede the inconsistent provisions of the Note. Except as modified, amended or supplemented by this Note Rider, the Note shall remain in full force and effect.


    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Payment Rider to Note.



_Harry L Frazier_ _____ (Seal)
HARRY L FRAZIER                              - Borrower

_____ (Seal)
                                             - Borrower

_____ (Seal)
                                             - Borrower

_____ (Seal)
                                             - Borrower

_____ (Seal)
                                             - Borrower

                                             (Seal)

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)
For use with Adjustable Rate Mortgage Loans

LENDER OR LENDER'S AGENT:
Fremont Investment & Loan
2727 East Imperial Highway, Brea, CA 92821

☐ Preliminary   ☒ Final
DATE: 6/26/2006
LOAN NO.: 30000000127956
Type of Loan: Conventional

BORROWERS: HARRY L FRAZIER

PROPERTY: 1330 MOUNTAIN VIEW RD, Stafford, VA 22554

Disclosures are estimates based on an anticipated funding date of   6/30/2006

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 11.279% | $ 2,099,258.18 | $ 643,927.25 | $ 2,743,185.43 |

### PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE Monthly BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE Monthly BEGINNING |
|---|---|---|---|---|---|
| 24 | $4,816.43 | 8/1/2006 | | | |
| 6 | $6,337.48 | 8/1/2008 | | | |
| 329 | $6,467.30 | 2/1/2009 | | | |
| 1 | $461,824.53 | 7/1/2036 | | | |

DEMAND FEATURE:   ☒ This loan does not have a Demand Feature.   ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
☒ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

INSURANCE:   The following is required to obtain credit:
☒ Property Insurance   ☐ Flood Insurance
You may obtain the insurance from anyone you want that is acceptable to the creditor.

SECURITY:   You are giving a security interest in:
☐ The property being purchased, including fixtures, leases, and rents derived from the property.   ☒ The property you already own, including fixtures, leases and rents derived from the property.

ASSUMPTION:   Someone buying your home
☒ may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms
☐ cannot assume the remainder of the mortgage on the original terms

LATE CHARGES:   If your payment is more than 15 days late, you will be charged a late charge of   5.000 % of the overdue payment.

PREPAYMENT:   If you pay off your loan early, you
☐ may   ☒ will not   have to pay a penalty.
☐ may   ☒ will not   be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.
o means estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_Harry L Frazier_   6/26/06
HARRY L FRAZIER   BORROWER/DATE

_Victoria Meredith_   6/26/06
VICTORIA MEREDITH   BORROWER/DATE

BORROWER/DATE                    BORROWER/DATE

-788 (0310)   VMP Mortgage Solutions (800)521-7291   10/03
2005 GBF Systems, Inc.   The contents of this form in whole or in part are protected under the copyright laws of the United States

EXHIBIT 3

Exhibit C

LLS-VF152

 

## NOTICE OF RIGHT TO CANCEL

LENDER: Fremont Investment & Loan

DATE 06/26/2006
LOAN NO. 30000000127956
TYPE Conventional

BORROWERS/OWNERS HARRY L FRAZIER

ADDRESS     1330 MOUNTAIN VIEW RD
CITY/STATE/ZIP Stafford, VA  22554
PROPERTY    1330 MOUNTAIN VIEW RD, Stafford, VA  22554

### YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1)  The date of the transaction, which is June 26, 2006
          or
(2)  The date you received your Truth in Lending disclosures;
          or
(3)  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Fremont Investment & Loan
1065 N. Pacificenter Drive, Anaheim, CA  92806
Funding Dept.      Attn: Funding Manager

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of 6/29/2006
          (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

### I WISH TO CANCEL

_____                          _____
SIGNATURE                                         DATE

I/We received Two (2) copies of the Notice of Right to Cancel this Date ____June 26____, 20 06 .


_____                          _____
BORROWER/OWNER HARRY L FRAZIER                    VICTORIA MEREDITH

-64 (0305) 01                    VMP Mortgage Solutions (800)521-7291                    10/00



**Exhibit D**

LLS-VF154



## NOTICE OF RIGHT TO CANCEL

LENDER: Fremont Investment & Loan

BORROWERS/OWNERS HARRY L FRAZIER

ADDRESS    1330 MOUNTAIN VIEW RD
CITY/STATE/ZIP Stafford, VA  22554
PROPERTY    1330 MOUNTAIN VIEW RD, Stafford, VA  22554

DATE 06/26/2006
LOAN NO.  30000000127956
TYPE  Conventional

### YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1)    The date of the transaction, which is June 26, 2006
        or
(2)    The date you received your Truth in Lending disclosures;
        or
(3)    The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Fremont Investment & Loan
1065 N. Pacificenter Drive, Anaheim, CA  92806
Funding Dept.    Attn: Funding Manager

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of  6/29/2006
        (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

### I WISH TO CANCEL

_____    _____
SIGNATURE                        DATE

I/We received Two (2) copies of the Notice of Right to Cancel this Date _June  26_ , 20 _0 6_ .

_Harry L Frazier_                  _Victoria Meredith_
BORROWER/OWNER HARRY L FRAZIER          VICTORIA MEREDITH

VMP -64 (0305).01           VMP Mortgage Solutions (800)521-7291          10/00

**Exhibit E**

LLS-VF155