IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Richmond Division**

VICTORIA L. FRAZIER,

        **Plaintiff**

v.                            **CIVIL NO. 3:11cv497-JRS**

EXPERIAN INFORMATION
SOLUTIONS, INC. TRANS UNION, LLC and
LITTON LOAN SERVICING, L.P.,

        **Defendants.**

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
HER MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW the Plaintiff, by counsel, and for her Reply in Support of her Motion for

Partial Summary Judgment, she states as follows:

**OVERVIEW**

Summary Judgment motions are a staple of defense litigation.  And with such defense

motions come a series of cases in which defendants complain about the inadequacy of a non-

movant's response, proffered evidence or disputed facts.  Yet when a consumer plaintiff, as

Victoria Frazier, makes the simplest of motions – asking the Court to find inaccurate

Defendant's credit reporting that a woman who never signed or agreed to pay a note had

defaulted and suffered a foreclosure of such note – Litton offers zero evidence, material dispute

or meaningful opposition.

1

This case is set for trial in early April.  The Court is familiar with Plaintiff's counsel's track record in getting FCRA cases settled and off of a trial path.  Yet it appears now that there is no means shy of summary judgment to force Defendant to accept that which the facts and law demand:  Victoria Frazier did not owe Litton any money.  Not then and not now.  Litton's credit reporting was inaccurate.  Litton cannot offer any basis for its refusal to lawfully investigate and remove the inaccurate reporting.  Summary judgment is proper.  And necessary.

## DEFENDANT DOES NOT SUBSTANTIVELY DISPUTE PLAINTIFF'S STATEMENT OF FACTS

Defendant has opposed Plaintiff's motion without offering any facts or evidence it contends are contrary to those offered by Ms. Frazier as undisputed.  Local Rule 56(b) requires that, "A brief in response to [a Rule 56] motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute."  While Litton attempts several procedural or technical challenges to Plaintiff's facts and evidence, it does not comply with Local Rule 56 by listing facts or citing parts of the record that it believes it could use at trial to contest the facts listed by the Plaintiff.  Plaintiff addresses such challenges below.  However, the case law and procedural outcomes suggested within Defendant's opposition are those that have arisen when both parties presented evidence and one of the parties challenged the opposing party's evidence.  In this case there is only the Plaintiff's evidence.  So, for example, while Litton complains that Plaintiff's affidavit stating that she

never signed any of the Litton mortgage documents (not the note, the note "rider" or the deed of trust "rider") is "conclusionary", it offers not a shred of evidence to refute this testimony.

Further, as with Litton's casual plea for a summary judgment stay to gather more evidence, addressed below, its discussion of what it contends are defects in Plaintiff's affidavits is procedural improper.  Defendant does not formally move to strike the Plaintiff's affidavits. Litton is not appearing naively or *pro se* in this case.  It knows better. *Jones v. Owens-Corning Fiberglas Corp. & Amchem Products, Inc.*, 69 F.3d 712, 718 (4th Cir. 1995) ("To the extent that these arguments may be seen as challenging the admissibility of these affidavits, we believe that OCF's failure to move to strike them below constitutes a waiver of these arguments. *See, e.g., Casas Office Machs., Inc. v. Mita Copystar Am., Inc.,* 42 F.3d 668, 682 (1st Cir.1994) ("Unless a party moves to strike an affidavit under Rule 56(e), any objections are deemed waived and a court may consider the affidavit"); *cf. Kollsman, A Div. of Sequa Corp. v. Cohen,* 996 F.2d 702, 707 (4th Cir.1993)"); *Discovery Licensing, Inc. v. King's Int'l Multimedia Co., Ltd.*, 260 F. App'x 537 (4th Cir. 2007) ("To the extent King's contends that the affidavits submitted by Discovery in support of its summary judgment motion did not comply with Fed.R.Civ.P. 56(e), we find that King's has waived its challenge by failing to file a motion to strike the affidavits in the district court.").

Defendant also ignores the burdens and posture of a FCRA case like this one.  Its opposition is based on a strategy of hoping to survive rather than attempting to establish the truth or correctness of its reporting.  But the burdens of a FCRA case and the contested elements in the case are at least in part on the creditor.  A consumer is not obligated to prove a negative:

3

to eliminate every conceivable, theoretical possibility by which a credit or could claim some indebtedness. In a world of identity theft, this is particularly material. Instead, the question is whether or not a finisher such as Litton accurately "verified" that that subject debt was owed by the consumer. There are actually three outcomes available in a consumer dispute response. Litton could respond that it had "verified" that its reporting was correct. Alternately, it could have (and actually should have) verified that the reporting was inaccurate – that the debt was not owed. But even if Litton would not go so far, it could have at least responded that it could not verify either alternative. If this had occurred, the account still would have been corrected and deleted. *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432 (4th Cir. 2004) "*See* 15 U.S.C.A. § 1681i(a)(5)(A) (providing that if disputed information "cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation")"). Alternately, Litton could have noted the account as "disputed", thus freeing the Plaintiff from its credit score impact. *Saunders v. Branch Banking & Trust Co. of VA*, 526 F.3d 142, 147-49 (4th Cir.2008); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162-63 (9th Cir. 2009).

Defendant's primary challenge to Plaintiff's statement of facts is its assertion that Ms. Frazier's affidavit is somehow a "self-serving affidavit from herself." Def. Mem. at 3. Really, what Defendant is arguing is that a party must present additional corroboration for a factual allegation beyond their affidavit. This of course is not the law. Various cases, those cited by Defendant, Def. Mem. at 14, have considered a defendant's affidavit on summary judgment and criticized same. But in every such instance, the affidavit was not procedurally "disqualified" or

ignored.  Instead, the court was weighing the attempted response affidavit against competing

evidence from the moving defendant.  The actual law regarding Summary Judgment affidavits is

set by the rule itself: "An affidavit or declaration used to support or oppose a motion must be

made on personal knowledge, set out facts that would be admissible in evidence, and show that

the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56.  *See*

*also Perry v. Johnson*, 3:10CV630, 2011 WL 3359519 (E.D. Va. Aug. 3, 2011) (" 'summary

judgment affidavits cannot be conclusory or based upon hearsay.' " (citation omitted) ).

Defendant's complaint as to Ms. Frazier's declaration is neither explained nor founded.  Unlike

the cases cited by Litton, Plaintiff does not suggest any contrary evidence.  And the

"conclusionary" statement:  I have never taken out any loans or mortgages on my home" is

simple, and reaches a conclusion, but is fully adequate as a free-standing admissible fact.

### *Plaintiff's Statement of Facts*

¶¶ 2., 4 and 5. Defendant does not dispute that Ms. Frazier never signed the Note upon

which its credit reporting was based.

¶ 3. Defendant does not dispute that Ms. Frazier never signed the Note upon which its

credit reporting was based.

However, Litton now claims that Ms. Frazier signed the Deed of Trust Rider.  First, there

is no admissible evidence that this is true and dispositive admissible evidence that it was not.

Plaintiff has in her initial Declaration testified otherwise.  *See also* Exhibit H, Plaintiff's

Supplemental Declaration, ¶¶ 7-10 ("I did not sign or initial the Adjustable Rate and Balloon

Payment Rider to the Deed of Trust. … My signature and initials are not on the Adjustable Rate and Balloon Payment Rider to the Deed of Trust.")  As is apparent from the cover of the Deed of Trust, the closing agent apparently had to "rerecord [the Deed of Trust] to include [the] balloon payment rider." Plaintiff's Exh. D, Docket No. 29-4 at 6.   Ms. Frazier never saw the rider to the deed of trust nor did she sign it.   Any person comparing her signatures with that on the Rider could see the obvious:  they are not the same.  *See Id*. at  19 and 24.

Second, Litton's claim that Ms. Frazier was somehow still obligated on the note because of this rider is not a "genuine" dispute.  And it is made in bad faith.  As Litton will have to reveal to the Court at argument, or if this motion were not granted, its operational employees have never disputed the error.  Defendant's substantive defense would more truthfully be that its "left arm did not know what its right arm was doing."  That one department, operations, did not correct its credit reporting and that its credit reporting department does not look outside of its own department when conducting a FCRA "investigation."  As argued below, a second affidavit, from a paralegal communicating with Litton directly, testified that Litton's operations employees acknowledged that Defendant's records showed that Victoria Frazier was not an obligor on the note.  This is further corroborated by the limited documents (actually, it has only produced its account notes) Litton has recently produced in discovery.  The account note states, **"Loa says there should not be a co-borrower on this loan, only b1's name on orig loan note, gave Info to mys spvsr ILester who spoke to CART, after reviewing original loan documents will be removing B2 from this acct."**  Plaintiff's Exhibit I.

This view – Litton's actual internal opinion – is consistent with the actual loan

documents.  Even if the closing agent or lender had not forged Ms. Frazier's signature, the Deed of Trust Rider is not itself a mortgage note.  Instead, it is a notice provided in the courthouse land records.  And as detailed below, even the language in the Deed of Trust Rider differs from the Note Rider.  While the Note Rider

¶ 6.    Defendant does not dispute that Ms. Frazier never signed the Balloon Payment Rider to Note attached as Exhibit C.

¶¶ 7.  And 11   Defendant apparently disputes that when Ms. Frazier telephoned the account service telephone number for Litton, the Defendant's employees refused to speak with her because she was not listed in Litton's internal records as the loan obligor.  Yet it offers no factual support or even an asserted denial.  Litton does not even assert by bare pleading a denial of the Plaintiff's recollection and testimony.  Instead, it relies only upon its stale complaint about Plaintiff's affidavit.  In opposing paragraph seven of Plaintiff's statement, Defendant newly asserts a hearsay objection based upon the Plaintiff's inability to identify the actual names of the employees she spoke with when telephoning Litton.  Such testimony is not itself hearsay.  Fed. R. Evid. 801(d)(2).  Defendant's complaint is also remarkable as it does not apparently dispute the substance of the testimony – that Litton would not communicate with Ms. Frazier about the subject loan because she was not identified by Litton as its obligor. Regardless, such testimony is corroborated by the separate declaration of Olga Macias, Plaintiff's Exh. G, Docket No.  29-7; and Defendant's own records.  Plaintiff's Exhibit I.

Litton's last attempt to create a material dispute as to paragraph seven deserves little attention.  The fact that a member of a household who handles the accounting for the household

is immaterial to the question of who signed a note and is contractually obligated to pay it.

*Mullins v. Equifax Info. Services, LLC*, CIV. 3:05CV888, 2007 WL 2471080 (E.D. Va. Aug. 27,

2007), a FCRA case tried before Judge Payne in which the plaintiff had handled household

finances, but was not the obligor on the credit account ("TU argues that the Court erred when it

granted the Plaintiff's motions in limine to exclude evidence that Plaintiff was an obligor on the

disputed credit card account. The Court heard TU's arguments at the Final pretrial conference,

(Final Pretrial Tr. at 2:3 to 21:14), and excluded the evidence then. In essence, TU had no

admissible evidence on that point and the Court so held at the final pretrial conference. TU does

not make any new arguments here, and the Court finds no reason to change its prior ruling.")

¶ 8.    Plaintiff attached the expert witness report of real estate expert, Todd Condron.

As Defendant has not retained or disclosed an expert of its own and has yet to suggest a factual

basis for its reporting, Litton again attacks only the process of Plaintiff's evidence and not its

material substance.  Litton offhandedly suggests, but not object that the report was not sworn

under oath.  Absent a motion to strike or formal objection, the report would remain even as

unsworn.  Still, out of an abundance of caution and in an effort to continue Plaintiff's

substantive basis for the motion, she has attached Mr. Condron's attestation under oath.

Plaintiff's Exhibit J.

Littons' principal dispute with Mr. Condron is that he is an attorney.  Though Defendant

asserts the incorrect basis to challenge a pure legal conclusion as proper expert opinion

testimony (due process), the Court would still properly limit Mr. Condron's testimony on a

more practical basis.  See e.g. Fed. R. Evid. 703; *McDevitt v. Guenther*, 522 F. Supp. 2d 1272,

1294 (D. Haw. 2007) (collecting "attorney expert" cases).  But Mr. Condron's testimony is relevant and admissible to explain the factual-based purpose and use of deed of trust riders and of the practice of a non-obligor co-owner's required execution of the *in rem* deed of trust.

¶¶ 9. and 10.   Plaintiff established by her affidavit that in August 2010, she observed that her credit reports with Experian, Equifax and Trans Union contained the Litton mortgage account.  Plaintiff's counsel does not understand Defendant's asserted contest to this statement of fact.  Litton does not deny that it reported the subject account as delinquent and as the Plaintiff's obligation in her credit reports.

¶¶ 12. through 17.     Defendant does not deny that (a.) the Plaintiff made her credit reporting disputes to the national reporting agencies as required by 15 U.S.C. § 1681s-2(b); (b.) that Equifax deleted the Litton account from her Equifax reports; and (c.) that Experian and Trans Union did not delete the Litton account tradeline.  Instead, Defendant's only response is its casual and repeated complaint that Ms. Frazier cannot testify to a conclusion (such as, "Equifax deleted the account") because this testimony would be "self-serving" or because it would constitute hearsay.  The former – that the affidavit is "self-serving" is beyond further ridicule.  This is not the law.  The standard for an admissible affidavit is provided in Rule 56, but neither the Court nor the Plaintiff need create a more properly coherent straw man argument to better frame Defendant's argument on Litton's behalf.  When the only testimony or evidence in the record is the Plaintiff's affidavit, no matter how much more detailed Defendant claims an interest, the fact remains that the only evidence is the Plaintiff's.

Regardless, the testimony Plaintiff offers as to the actions of Trans Union and Experian

were observed by Ms. Frazier.  And is not disputed by Litton.  In fact, it acknowledges and defends the fact that it continued to report to the Plaintiff's credit reports that she was the obligor on its delinquent note.  *See e.g.* Def. Mem. at 9, ¶¶ 19, 21.

¶¶ 18. and 21.  Defendant's only dispute of the various factual bases for it to have known of the inaccuracy of its credit reporting is its refrain regarding the "self-serving" affidavit.

However, in its brief, Litton asserts a right to claim the Plaintiff as its obligor based on the common law necessaries doctrine.  Plaintiff will address this in argument below, but it bears noting that it introduces such a non-contract based excuse for its reporting by citing (a.) a Virginia Code section, Va. Code § 55-37 that expressly states that "a spouse shall not be responsible for the other spouse's contract or tort liability to a third party" and bars any application that would create a lien on a 'tenancy in the entirety' owned real property; and (b.) a Ninth Circuit case interpreting Arizona community property law (and of course, Virginia is not a community property state).

¶¶ 19. and 20.  Not withstanding all of the repeated "self-serving" and stale process complaints about Plaintiff's statement of fact, Litton does not dispute that it reported the subject mortgage loan to Plaintiff's credit reports and has not removed same.

### ARGUMENT

Defendant asserts that its reporting was accurate on two grounds – that Plaintiff signed the Deed of Trust Rider and based on the common law doctrine of necessaries.  Both are not even close.

### A.     VICTORIA FRAZIER WAS NOT THE OBLIGOR ON LITTON'S MORTGAGE NOTE.

Defendant's argument and language used in its brief is not truthful.  Contrary to Litton's attempted reference to the Deed of Trust Rider as the "Note" (Def. Mem. at 13), there is already a "Note" and the Plaintiff never signed it.  Nor did she sign the Adjustable Rate Rider for that Note.  No one argues otherwise.  There is not a second signature on either document.  Instead, Litton would ask the Court to recharacterize the Deed of Trust Rider as a separate and independent contract and note.  Yet even that Rider was never signed by the Plaintiff.

### 1.     Defendant Alters the Language of the Deed of Trust Rider to misrepresent its contents to the Court.

More immediately, she asks the Court to closely consider Defendant's excerpt from the Deed of Trust Rider and compare same to the actual document.  Def. Mem. at 13-14 and Plaintiff's Exhibit D, Docket No. 29-4 at 22.  Litton omits the critical paragraph at the bottom of page 1 of the Rider.  It entirely changes the meaning of the cited text.  The Rider serves one purpose – to advise persons who may examine the real property title history that the Note that is secured by the publicly filed Deed of Trust contains an adjustable rate and balloon payment term.  The Note Rider adds those terms and formally "modify[s], amend[s] and supplement[s]" Sections 3 and 4 of the Note.  It does so by stating the revised Sections 3 and 4.  In contrast, the Deed of Trust Rider simply states that:

> **Borrower has executed a Balloon Payment Rider to the Note (the "Note Rider") dated the same date as this Security Instrument Rider.  Among other**

11

**things the Note Rider modifies, amends, and supplements Sections 3 and 4 of the Note to read, in their entirety, as follows:**

*Id*. at 1.  By omitting this critical paragraph, Defendant changed the text of the Deed of Trust Rider from stating:  "The Note Rider contains a Balloon Payment Rider in which the signatory of the note states, 'I owe this loan on these terms'", into the out of context statement, "I owe this loan on these terms."1

**2.      The Plaintiff Never Signed the Deed of Trust Rider.**

The legal irrelevance of the Deed of Trust Rider is dispositive, but it also should not minimize an equally important fact:  Though there is a signature with the name "Victoria Meredith" on the Deed of Trust Rider, it was not made by the Plaintiff.  The Court (and defendant) can tell this by a lay review of the signature with the legitimate one made on the actual Deed of Trust.  But, Plaintiff has as well offered her under oath testimony, now by two affidavits, that she never signed such a document.  It was apparently created by Litton's closing agent after an omission that required the rerecording of the Deed of Trust.

---

1 The Deed of Trust and Deed of Trust Rider were documents creating a security interest using the real property of the Plaintiff and her husband to collateralize the in personum debt of the husband.  Litton apparently fails to understand the distinction between an *in rem* and an *in personum* obligation.  "A mortgage is a conveyance or retention of an interest in real property as security for performance of an obligation. A mortgage is enforceable whether or not any person is personally liable for that performance." Restatement (Third) of Property (Mortgages) § 1.1 (1997).

Thus, in an alternate reality in which the Deed of Trust Rider became a "Note", the Plaintiff would still not be liable and Litton's credit reporting would still not be accurate. Further, while a creditor is entitled to presume an obligor's signature as authorized or valid, the burden to prove its validity shifts when raised formally by the accused obligor.  Va. Code Ann. § 8.3A-308.  Despite a year and a half of notice and months of litigation, Litton still has not offered any explanation, let alone evidence as to how the signature could belong to Ms. Frazier.

## B.      THE DOCTRINE OF NECESSARIES IS INAPPLICABLE.

Defendant's resort to the ancient common law concept of necessaries to support its modern credit reporting that the Plaintiff owed, defaulted upon and suffered a foreclosure on a $ 675,000 mortgage loan defies credibility.   Even if somehow there were a relevant necessaries interplay in the Litton – Ms. Frazier relationship (or lack of one), Litton did not report to the national credit bureaus that the Plaintiff owed it a necessaries debt for her husband.  It reported a pure contract mortgage loan with a specific dollar amount, payment terms and monthly payment obligation.   The Court need not even start down this odd road as the Defendant did not report a necessaries debt to Equifax, Trans Union or Experian.  Reporting a mortgage note obligation when the actual basis for the asserted debt was the "doctrine of necessaries" would at best be incomplete and at worst fully inaccurate. *Saunders v. Branch Banking And Trust Co. Of VA*, 526 F.3d 142, 148 (4th Cir. 2008) ("FCRA requires furnishers to determine whether the information that they previously reported to a CRA is "*incomplete* or inaccurate." § 1681s-2(b)(1)(D) (emphasis added). In so mandating, Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported

13

information misleading. Courts have held that a credit report is not accurate under FCRA if it provides information in such a manner as to create a materially misleading impression.")(citations omitted).

Yet if the Court chose such a path for consideration, it would also fail.  Necessaries debt, if one even exists for "shelter" is by definition only for payment of an amount advanced to and unrecovered from a child or spouse and which was "necessary" for that person's upkeep and survival.  Assuming *arguendo* that Virginia would recognize such a doctrine for "shelter", as Litton asserts, the doctrine would only apply to that amount of money necessary to shelter the infant or spouse.  Litton presents no evidence, and certainly never could, that a $ 675,000 mortgage loan was necessary to shelter Ms. Frazier's husband.

Unlike a note, which may be objectively reported with payment terms, balance, etc, a necessaries obligation is undeterminable absent a decision by a judicial fact finder.  Even if necessaries could apply and if there were actually some credit reporting code that could be used for such a debt (and assuming the credit reporting agencies accepted such reporting type), Litton could not "verify" a particular debt amount or term as due and owing absent a judgment:

> It is for the court to determine, as a matter of law, in the first place, whether the things supplied may fall within the general classes of necessaries, and, if so, whether there is sufficient evidence to warrant the jury in finding that they were necessary. If either of these preliminary inquiries be decided in the negative, it is the duty of the court to nonsuit the plaintiff who seeks to recover from the infant. If they be decided in the affirmative, it is then for the jury to determine whether, under all the circumstances, the things furnished were actually necessary to the position and condition of the infant, as well as their reasonable value, and whether the infant was already sufficiently supplied.

14

*Bear's Adm'x v. Bear*, 131 Va. 447, 109 S.E. 313, 315-16 (1921). "The party who provided the goods or services to the infant is entitled to the 'reasonable value' of the things furnished. In contracts for necessaries, an infant is not bound on the express contract, but rather is bound under an implied contract to pay what the goods or services furnished were reasonably worth. *Zelnick v. Adams*, 263 Va. 601, 608, 561 S.E.2d 711, 715 (2002).   In a FCRA case in particular, the Court cannot extrapolate a necessaries justification for credit reporting of one spouse's account into the credit report of the other spouse who did not sign the loan documents. *Alabran v. Capital One Bank*, CIV.A. 3:04CV935, 2005 WL 3338663 (E.D. Va. Dec. 8, 2005) ("Although it is fair to infer that the Plaintiff reaped some benefit from the use of the subject credit cards, there is no evidence that any charge was for a medical emergency or other medical necessity of the spouse for which Plaintiff could be held liable under any "necessaries" doctrine.")

Defendant's support for such an odd defense of its credit reporting is limited really to two authorities – Va. Code § 55-37 and "Lundell v. Citibank" [*In re Lundell*], 92 F.3d 1192 (9th Cir. 1996). The later is the shortest to rebut.  The Ninth Circuit case is cited out of context.  It does not hold as Defendant summaries in parenthesis.  Instead, in condiering an appeal from an Arizona bankruptcy court answering a question regarding that state's specific community property law, the Court of Appeals stated its own summary of the case as:  "The issue in this case is whether the marital community is liable for repayment of a Promissory Note when only one spouse signed the Note but both spouses signed the Deed of Trust securing the Note and used the loan proceeds to benefit community property." *In re Lundell*, 92 F.3d 1192

15

(9th Cir. 1996).  The case has nothing to do with the necessaries doctrine and is obviously inapplicable in Virginia, a non-community property state.

Defendant also cites Virginia Code § 55-37.  As summarized above, this section states exactly the opposite of Defendant's conclusion.  The provision expressly states that one spouse is not contractually liable for the debts of the other spouse.  And it bars the extension of a necessaries judgment debt to a real property lien.  And one of the very next sections, Va. Code 55-39, provides:

> No conveyance or other act suffered or done by the husband only of any land which is the inheritance of his wife shall be or make any discontinuance thereof, or be prejudicial to the wife or her heirs, or to any having right or title to the same by her death, but they may respectively enter into such land, according to their right and title therein, as if no such act had been done.

Va. Code Ann. § 55-39.  Not only is there no case law in the several hundred year old history of our state to support Defendant's claim, but what statutes would apply clearly state or infer to the contrary.  A mortgage loan is not a necessary. *Vasilion v. Vasilion*, 192 Va. 735, 740, 66 S.E.2d 599, 602 (1951) ("[W]ere a tenancy by the entirety in the fee simple is once created the property is completely immune from the claims of creditors against either husband or wife alone. See Glenn on Fraudulent Conveyances and Preferences, Vol. 1, page 280.").  As the Virginia Supreme Court long ago explained:

> Thus if the husband should be engaged in a speculative business enterprise which turned out badly, forcing him to go into bankruptcy, the property held by the husband and wife together, would not be subject to the claims of his creditors. Moreover, the judgments of the individual creditors of either spouse would only be leviable upon the respective spouse's interest if and when he or she should

> survive the other, and, in the meantime, the husband and wife could convey the
> property so held to a third party, who would take it completely free from the
> claims of the individual creditors of the husband and wife. (4 Thompson, Real
> Property, § 1824).'

*Id* at 742.  There was no necessaries obligation.  There is no proof of the nature and amount of

such a debt.  And there is absolutely n evidence to rebut Plaintiff's testimony and the record

before the Court that Litton's credit reporting was inaccurate.


### C.      DEFENDANT DOES NOT DISPUTE THAT ITS FCRA INVESTIGATION WAS UNREASONABLE.

Defendant's opposition to Plaintiff's motion based upon the patent unreasonableness of

Litton's FCRA investigation is anemic.  It offers no defense or explanation of how it could have

ignored its own internal records showing an agreement that the Plaintiff was not Litton's

obligor.  Or why it had not corrected its credit reporting after a year and a half of disputes and

notice.  Defendant does not dispute or argue the Plaintiff's statement of the FCRA and legal

standard or elements for proving a claim under 15 U.S.C. § 1681s-2(b).

Instead, Litton offers three responses to the motion as to negligence under § 1681s-2(b).

First, points out, correctly, that a finding that its reporting was accurate would moot this motion.

The reporting was not accurate.  At best, it was incomplete and misleading.

Defendant's second response is to retreat to the general (and not universal) rule that the

reasonableness of a FCRA investigation is usually a jury question.  And this is true.  Usually it

is a jury question.  But in the case *sub judice*, no reasonable fact finder could conclude that

Litton's numerous failed investigations were reasonable.   As the United States District Court held in *Robertson v. J.C. Penney Co., Inc.*:

> Nevertheless, in spite of having information at their access to clearly verify that the plaintiffs' had paid this debt, GE employees responded to the TransUnion and Equifax ACDVs that the plaintiffs' account was properly charged off for nonpayment. This response, in the face of the statutory requirement to perform a reasonable investigation, was, at the very least, negligence on the part of the GE employees. While this finding is one generally left to the province of the trier of fact, in this case the court finds that no reasonable juror could conclude otherwise but that GE's "investigation" of the dispute noted in the ACDVs from both TransUnion and Equifax was not "reasonable" as a matter of law. Thus, there being no disputed issue of material fact in this regard, the plaintiffs are entitled to summary judgment on the issue of negligence.

*Robertson v. J.C. Penney Co., Inc.*, CIV.A. 2:06CV3KSMTP, 2008 WL 623397 (S.D. Miss. Mar. 4, 2008).

Defendant's final response to this component of the motion is a casual request for more time to gather evidence in response.  Such a request must be made by formal motion, supported by an affidavit and explanation as to why more time would be needed and what evidence is currently unavailable. Fed. R. Civ. P. 56(f).  "Failure to file a Fed. R. Civ. P. 56(f) motion is itself a sufficient ground to reject a claim that discovery was inadequate, and is also a factor favoring the granting of summary judgment to the movant. Summary judgment is thus likely to be awarded where a responding party files neither a Fed. R. Civ. P. 56(f) affidavit nor an affidavit setting forth facts in accordance with Fed. R. Civ. P. 56(e)."  27A Fed. Proc., L. Ed. § 62:645.

Defendant's request is also improper for two other reasons.  First, if it did not know enough about the subject loan to support its position in opposing summary judgment, it could not have lawfully responded to the credit bureaus that it had "verified" the debt.   Second, even if Litton could seek out and find responsive evidence – and it could not – it is to late to do so. Trial is in April.  Discovery is over.  Defendant would have had to disclose such evidence and produce it in response to Plaintiff's Interrogatories and Requests for Production.

### D.      DEFENDANT HAS NOT PROPERLY CROSS-MOVED FOR SUMMARY JUDGMENT.

At several points in its summary judgment brief, Defendant suggests an entitlement for summary judgment dispositively in its favor.  Such a request is improper.  Litton has not complied with the requirements of Local Rule 56, nor has it asked for summary judgment in the time permitted by the Court's scheduling order.  "When considering cross motions for summary judgment, the Court must apply the same standard outlined above, and cannot resolve genuine issues of material fact. *Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.,* 176 F.3d 794, 797 (4th Cir.1999). The Court should "consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard." *Banner Life Ins. Co. v. Noel*, 3:11-CV-434, 2012 WL 508972 (E.D. Va. Feb. 15, 2012).

Further, even Defendant's half-hearted request for judgment improperly assumes that the posture of Plaintiff as movant is the same as she would face as nonmovant.  If Litton offered

some sort of statement of fact, Plaintiff would have responded with additional evidence given the different burden.

## CONCLUSION

Accordingly, for the reasons stated herein, Plaintiff again asks the Court to enter summary judgment in her favor as to the accuracy (inaccuracy) of Litton's credit reporting and her claim that Defendant's lack of an FCRA investigation was at best negligent.  After such judgment, she will endeavor to again convince Litton to amicably dispose of the case before trial.

Respectfully submitted,

**VICTORIA L. FRAZIER**

By_____/s/_____
Leonard A. Bennett, VSB #37523
Susan Rotkis, Esq. VSB #40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 - Facsimile
E-mail:  lenbennett@cox.net
E-mail:  srotkis@clalegal.com

Kristi Cahoon Kelly, VSB #72791
SUROVELL ISAACS PETERSEN & LEVY, PLC
4010 University Drive, Second Floor
Fairfax, Virginia 22030
(703) 251-5400 - Telephone
(703) 591-9285 - Facsimile
E-mail:  kkelly@siplfirm.com

*Counsel for Plaintiff*

20

## CERTIFICATE OF SERVICE

I hereby certify on this 6th day of March, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

**Gary L. Edwards**
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC (Johnson C)
100 Med Tech Parkway
Suite 200
Johnson City, TN 37604
423-928-0181
Fax: 423-979-7634
Email: gedwards@bakerdonelson.com

*Counsel for Defendant Litton Loan Servicing LP*

_____/s/_____
Leonard A. Bennett, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail: lenbennett@cox.net

21