**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**VICTORIA L. FRAZIER,**

        **Plaintiff**

    **v.**                                **CIVIL NO. 3:11cv497-JRS**

**EXPERIAN INFORMATION**
**SOLUTIONS, INC.,** *et al.*

        **Defendants.**

**MEMORANDUM IN REPLY TO DEFENDANT'S OPPOSITION**
**TO PLAINTIFF'S MOTION TO COMPEL AND**
**FOR RULE 37(c)(1) SANCTIONS**

Comes now the Plaintiff Victoria Frazier, by counsel, and in reply to Defendant's opposition to her Rule 37(c)(1) motion for sanctions and for relief under Rule 37(a) and (b) against Litton Loan Servicing, she supplies the following memorandum of law. The Defendant has not cited a single cognizable legal authority supporting its opposition to Plaintiff's motion demonstrating she is entitled to an order excluding any evidence that Litton Loan Servicing may seek to introduce on a motion, at a hearing or at trial, and that it has not previously disclosed pursuant to Rules 26(a)(1) and 26(e). The Plaintiff also respectfully requests an order compelling production and for other relief appropriate under Rule 37(b).  Its opposition to Plaintiff's motion only serves to corroborate Plaintiff's allegation that Defendant failed to supplement its mandatory disclosures and to respond to other discovery requests, failed to file a motion for protective order, failed to produce witnesses for depositions, and otherwise obstructed the discovery process.

**Overview**

Plaintiff moves the court to impose the sanction of exclusion that is automatically available

1

under Fed. R. Civ. P. 37(c)(1) when a party fails to disclose or produce information during the discovery period.   Instead of demonstrating substantial justification not only for its non-compliance with discovery but also its failure to move for a protective order, it attempts to deflect attention from its non-compliance by manufacturing allegations of discovery abuse against the Plaintiff.[1]   Even assuming, *arguendo*, any of its reasons for not complying with discovery were meritorious, because the Defendant did not timely move the court for a protective order and articulates its reasons for noncompliance for the first time in its opposition, it has now waived all of its arguments.

In order to prove her FCRA claim, Plaintiff must still prove that the Defendant's investigation was not reasonable.   In order to prove that the Defendant's acts were willful, she must prove that the Defendant's actions were reckless. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).   Summary judgment has been entered in Plaintiff's favor on the issue of accuracy and the court has taken under advisement the issue of reasonableness.  (Docket No. 50).

1.   Substantial justification does not exist and does not excuse Defendant's failure to comply with discovery or its failure to move for a protective order.

First, the Defendant cannot for the first time raise issues of substantial justification without having so objected and then timely moved for a protective order.  Fed. R. Civ. P. 26(c); *Ayers v. Cont'l Cas. Co.,* 240 F.R.D. 216, 222 (N.D.W. Va. 2007)(a party must respond truthfully, fully and completely to discovery or explain truthfully, fully and completely why they cannot respond).  A party is not excused from answering discovery based on its objections alone,

---

[1] The Defendant has supplied no acceptable factual support for its allegations that the Plaintiff has not complied completely with discovery.  In fact, it is quite obvious from the exhibits attached to both the Plaintiff's Memorandum in Support, and the Defendant's Memorandum in Opposition, there was no discovery abuse by the Plaintiff, who completely and timely supplied disclosures under Fed. R. Civ. P. 26(a)(1) & (e), as well as answered all of Defendant's written discovery pursuant to a meet and confer, withdrawing all but two privilege objections.

it must seek the protections of the court.  *Id.*; *Plant v. Merrifield Town Ctr. Ltd. P'ship*, 711 F. Supp. 2d 576, 584-85 (E.D. Va. 2010).  Furthermore, the Defendant has filed no affidavit or other evidence to support its assertions that it was impossible to answer discovery in the time permitted by the Court's order and the Rules. *Capetta v. GC Servs.*, 2008 WL 5377934, at *8. Even so, Plaintiff will address each of its newly-raised objections.[2]

(a)      Discovery was well underway prior to the substitution of counsel, which occurred less than two weeks prior to the close of discovery.

The Defendant lists a litany of reasons for not complying with discovery, alternately because it was recently acquired or because the Plaintiff is really to blame for its failure to participate in discovery.  As of the date of this filing, the Defendant has still not supplied (1) a signed, agreed protective order; (2) answers to interrogatories served on December 23, 2011; (3) documents requested by the Plaintiff on December 23, 2011.  It argues that it has acted with substantial justification and that the Plaintiff has not been harmed.  The Plaintiff filed this lawsuit on August 1, 2011, and Defendant was served on August 10, 2011.

The Defendant now claims that it only received the case file of 2,500 pages on March 15, 2012. (Def.'s Mem. at 4).  The fact that Defendant did not timely get a copy of the file to its counsel of choice should not visit a prejudicial harm on the Plaintiff, who has been conducting both discovery and who had engaged in settlement negotiations in good faith since August of 2011.  Plaintiff's case is, in part, based on allegations that the Defendant doesn't do what it is supposed to do when it is supposed to do it, and it resulted in damages to her.  Its refusal to participate in this case is consistent with that allegation.  It is unfortunate that a client's failure to keep counsel informed can lead to sanctions against a party that may improperly reflect upon

---

[2] See Pl.'s Mem. Support of Motion for Sanctions, Docket No. 44, exs. 44-4 and 44-3, which are Litton's objections to Pl.'s written discovery.

counsel.  This is not about counsel, this is about the Defendant.  The change in ownership and the burdens by litigating the many cases brought on by Defendant's violation of the law were known since it was served with the lawsuit in August and when the Ocwen/Litton acquisition closed on September 1, 2011.  *See*, Shareholder Relations Other News, *Ocwen Reports Q3 EPS Of $0.19, Revenue Up 28% to $122.5 Million, Income From Operations of $56.8 Million And Net Income of $20.2 Million and Announces New Purchase Agreement*, http://www.irconnect.com/cfonews/ocn/ocn_others.html?d=235784 (last visited March 26, 2012).

    (b)    Substitution of counsel is not an automatic reason to stay or continue the orderly conduct of a case in progress.

        Without supplying any factual support, affidavit, or other evidence, the Defendant argues that it did not have reasonable notice to supply a Rule 30(b)(6) witness because it has been newly acquired, it is over-burdened with lawsuits, and it usually takes 30-60 days to secure a corporate designee.  (Def.'s Mem. at 5).  Defendant supplies no authority demonstrating that it is proper to demand 30-60 days' notice for the deposition of a corporate designee. *Capetta v. GC Servs.*, 2008 WL 5377934, at *8.  The reasons that Defendant objected to the deposition notices at the time were:  improper, untimely and unreasonable. Defendant objected based on improper venue, notice without any prior correspondence, "unilateral deadlines are just not reasonable," that "I must go through certain procedures to obtain a 30(b)(6) witness, dates and locales," and "your request has simply not given us a sufficient amount of time."  (Def.'s Mem. Ex. 5).  The proper remedy for Litton was to have moved for a protective order or extension of time, it did neither.  Plaintiff sent a notice to depose witnesses on February 15 and 23, 2012, which notice

was received by Defendant, on February 1, 2012.[3]   The notices provided 14 and 22 days respectively to produce the noticed-witnesses, which notice is presumptively reasonable.  *Jones v. U.S.*, 720 F.Supp 355, 265 (S.D.N.Y. Sept. 5, 1989)(finding that eight days' notice was reasonable notice to take a deposition).

(c)      Change in ownership of a party is not an automatic reason to stay or continue the orderly conduct of a case in progress.

The Defendant has represented that it has changed ownership, which the Plaintiff understands to be through the acquisition of Litton Loan Servicing by Ocwen. However, the Defendant has yet to file a Local Rule 7.1 financial disclosure, so the Plaintiff relies upon the counsel's representation and publicly available information. *See*, Shareholder Relations Other News, *Ocwen Reports Q3 EPS Of $0.19, Revenue Up 28% to $122.5 Million, Income From Operations of $56.8 Million And Net Income of $20.2 Million and Announces New Purchase Agreement*,

http://www.irconnect.com/cfonews/ocn/ocn_others.html?d=235784  (last  visited  March  26, 2012). Like its new argument that substitution of counsel has brought on an inability to answer discovery, its new argument that it has too much going on to properly participate in this case should have been brought in the form of a timely protective order.  Surely, Litton and Ocwen knew this information in September when the deal closed, or in December at the scheduling conference and when discovery was served, or in January when its discovery was due, or in February when it substituted counsel.  Change in ownership can cause a serious impediment to litigation, but in this case, change of ownership as a reason for failure to participate in discovery

---

[3] Defendant also repeatedly refers to documents that were sent electronically as being served three days later.  Service of discovery documents is governed by Fed. R. Civ. P. 5(b), and for the most part the discovery at issue in this case was served electronically by consent under Fed. R. Civ. P. 5(b)(E), which service is complete upon transmission.

was not raised until March, after the close of discovery.

      (d)      Defendant did not provide the reason or date of separation, or the home addresses of the former employee/fact witnesses that were the subject of Plaintiff's Rule 30(b)(1) notices.

      At the time the Defendant objected to the Plaintiff's deposition notices, it also objected to producing 30(b)(1) witnesses requested by the Plaintiff that they were no longer Litton employees. Under Fed. R. Civ. P. 26(a) and (e), Litton was required to provide the home addresses of the individuals likely to have knowledge of the facts at issue in this case, including the ex-employees identified as Martha Castillo and Diane McKinney.  Counsel failed to supply any names of witnesses responsive to the request based on its objections and unsupported statement that the witnesses are "duplicative and a waste of time," "untimely," "truly unnecessary," and that "the issue is moot" (Def.'s Mem., Ex. 5).  Even more outrageous is Defendant's position that the fact witnesses are not likely to remember facts that happened in the case (Def.'s Mem. at 7), without ever giving the Plaintiff the opportunity to test that assertion within the parameters of the Federal Rules.  In fact, Plaintiff is entitled to learn information about Ms. Castillo and Ms. McKinney, including when and how they were separated from employment. *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 268 F.R.D. at 53-54, 56 (holding that the termination and reassignment of employees was suspicious enough to deviate from the general rule concerning the definition of managing agents for depostitions).   It would completely obviate discovery altogether if all a plaintiff had to do to prove her case would be to take the defendant's word for it, "that employee doesn't know anything."

      (e)      Defendant did not provide a date certain to depose a Rule 30(b)(6) witness until three weeks after the close of discovery.

On February 15, 2012, the Plaintiff indicated she was most agreeable to rescheduling the Defendant's depositions to be in Richmond, Virginia, on a date certain, prior to discovery cut-off. (Def.'s Mem., Ex. 5). However, she would have to wait until after discovery ended, in fact for more than three weeks, for a date convenient to the Defendant. On March 1, 2012, after the discovery cut-off and one month after the Plaintiff first noticed the depositions of the party witnesses, the Defendant offered a single, prejudicially belated date of March 21, 2012, and added a time limitation to conduct the deposition, "[t]he witness needs to fly out that afternoon." (Def.'s Mem., Ex. 6); see Fed. R. Civ. P. 30(d)(permitting a minimum of seven hours duration). Although, the Defendant stated it would request another date, such an offer is meaningless given the fact that discovery closed and that any possibility of meaningful follow-up with written or witness discovery was foreclosed.

(f)     Defendant requested Plaintiff enter an agreed protective order applicable to documents it claimed were confidential, for which the Plaintiff provided a sample protective order to which it would agree. Defendant took no further action to seek the court's approval of an agreed protective order, but still did not produce the documents Plaintiff requested.

The Plaintiff agreed to a standard protective order governing confidential documents in this case. (Def.'s Mem., Ex. 4). The Plaintiff supplied a proposed sample protective order. *Id*. The Plaintiff did not and does not require a protective order, yet she was immediately willing to agree to one that she supplied and that has been specifically ordered in other cases of this type in this district and division. This court has observed that protective orders have overwhelmed the federal courts, causing litigation to be conducted in secret, which is abhorred by the Fourth Circuit and the United States Supreme Court. *See*, *James v. Encore Capital*, 3:11CV221-REP

7

(E.D.Va. Jan. 23, 2011)(Tr. at 143:21-25)(Docket No. 132 & Docket No. 149-2)(Ex. A)[4]. After requesting a protective order and receiving the proposed order from the Plaintiff, Defendant did nothing.

(g)   The equities militate in favor of deposing a corporate designee in the district where the case was filed.

The Defendant, without citation or analysis, asserts that its obligation to produce a corporate designee under Rule 30(b)(6) is limited to the Defendant's principal place of business. *Contra, E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 268 F.R.D. 45, 56 (E.D. Va. 2010)(finding that under the *Armsey* analysis the proper venue for the party-witnesses who resided in Korea, the court held that the equities weigh firmly towards requiring the depositions to be held in Virginia). This is not only an incorrect statement of the law, but also fails to excuse the Defendant from the requirement that it move for the protection of the court according to Rule 26(c) in order to avoid its obligation to produce such a witness.  In fact,

> Courts have broad discretion to determine the appropriate location for a deposition. *Armsey v. Medshares Mgmt. Serv., Inc.*, 184 F.R.D. 569, 571 (W.D.Va.1998). Ordinarily, a plaintiff's deposition will be held in the forum district, as plaintiff in selecting the forum has consented to participating in proceedings there. *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 471 (E.D.Va. 2010). However, "because a non-resident defendant ordinarily has no say in selecting a forum, an individual defendant's preference for a situs for his or her deposition near his or her place of residence—as opposed to the judicial district in which the action is being litigated—is typically respected." *Id.* The same applies to corporate defendants; the initial presumption is that a corporate defendant should be deposed in the district of the corporation's principal place of business. *Id.; Armsey*, 184 F.R.D. at 571 (quoting *Turner v. Prudential Ins. Co. of Am.*, 119 F.R.D. 381, 383 (M.D.N.C.1988)). "To be sure, this presumption may be overcome, but only where circumstances exist distinguishing the case from the ordinary run of civil cases." *In re Outsidewall*, 267 F.R.D. at 472 (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651–52 (5th Cir.1979)). Factors that may overcome

---

[4] The reference to "Tr." is to the transcript of the hearing held on January 23, 2012.  The full transcript is available at Docket No. 149.  The entry for the transcript is Docket No. 132.  The pages referenced in this pleading are attached as Ex. A.

the presumption and persuade a court to permit the deposition be taken elsewhere
include: (1) location of counsel in the forum district; (2) the number of corporate
representatives to be deposed; (3) the likelihood that significant discovery
disputes will arise and necessitate resolution by the forum court; (4) whether the
persons sought to be deposed often engage in travel for business purposes; and (5)
the equities with regard to the nature of the claim and the parties' relationship.
*Armsey,* 184 F.R.D. at 571 (citing *Resolution Tr. Corp. v. Worldwide Ins. Mgmt.
Corp.,* 147 F.R.D. 125, 127 (N.D.Tex.1992) and *Turner v. Prudential Ins. Co. of
Am.,* 119 F.R.D. 381, 383 (M.D.N.C.1988)); *accord Rapoca Energy Co., L.P. v.
Amici Export Corp.,* 199 F.R.D. 191, 193 (W.D.Va. 2001). "[T]he court must
consider each case on its own facts and the equities of the particular situation."
*Rapoca Energy,* 199 F.R.D. at 193.

*Botkin v. Donegal Mut. Ins. Co.,* 5:10CV00077, 2011 WL 2447939, at (W.D. Va. June 15,

2011). So, while courts may "respect" a presumption that a corporate witness may be deposed

where it resides, the presumption is overcome in a consumer protection case such as this. For

instance, the Defendant has local counsel in the forum, the discovery embargo in this case

indicates that the parties may require the assistance of the court to resolve disputes arising during

the deposition. While it is difficult to gauge the number of designees required or whether those

individuals travel for business, the equities certainly militate in favor of deposing the Defendant

in the forum where the Plaintiff is a consumer who is in court only because the Defendant

refused to correct its inaccurate reporting to the consumer reporting agencies. *See also, E.I.

DuPont de Nemours & Co. v. Kolon Indus., Inc.,* 268 F.R.D. at 53-54, 56. The Defendant

regularly litigates in the Eastern District of Virginia.[5]  In her Complaint, the Plaintiff is already

alleging financial hardship directly related to the Defendant's actions and thus the equities

strongly favor deposing the party witnesses in the Eastern District of Virginia. The Defendant is

obviously in a better position to bear the burden of traveling to the forum for the purpose of

deposition in this case.

---

[5] A PACER check reveals that both Ocwen and Litton regularly litigate in the Eastern District of
Virginia, more frequently as defendants but also as plaintiffs.

Next, the Defendant complains that Plaintiff's willingness to accommodate Defendant's local counsel by noticing the depositions for the Virginia Beach Offices of Troutman Sanders, then counsel of record, was not only unilateral but untrue. (Def. s Mem at 5, n.4). The Defendant has offered absolutely no evidence in support of this allegation.[6]  The Plaintiff had every right and obligation to set the depositions in the Eastern District of Virginia and to do so by proper notice. The Plaintiff was willing to work with the Defendant in setting the depositions in Richmond, as requested by the Defendant.  But, the Defendant was not willing to provide a date and time prior to, or even temporally close to, the discovery cut-off, and left the Plaintiff completely in the dark for more than three weeks.

2.    Rule 26(e) requires the parties to timely supplement or correct mandatory disclosures, specifically not limiting the time for supplementation to the discovery period.

The Defendant complains that the Plaintiff has supplemented her mandatory disclosures after the discovery period closed. Rule 26(e) specifically provides that a party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response in a timely manner.  In this case, the Plaintiff has been conducting discovery and despite the Defendant's non-compliance, learning information that she had no previous knowledge of but may be required to disclose under Fed. R. Civ. P. 26(e).  This is the example of compliance, rather than the Defendant's perception that timely supplementation or correction is evidence of non-compliance. The Defendant has failed to analyze the Plaintiff's supplementation under any factor to demonstrate the supplementation was untimely or prejudicial.  *See, Zoltek v. U.S.*, 71 Fed. Cl.

---

[6] Plaintiff's counsel frequently opposes Troutman Sanders, Defendants former counsel, and agreed to this arrangement for the deposition of Rule 30(b)(6) witnesses in the past, such as *Wilkes v. GMAC*, Civ. No. 1:10Cv1160 (E.D.Va.).

1160, 168 (2006).

3.   Defendant incorrectly asserts that Plaintiff was late in providing her discovery responses.

The Plaintiff timely served all her mandatory disclosures as well as her discovery responses as counsel in the early stages of discovery extended to one another every courtesy in extending response times.  Plaintiff served her responses to written discovery on counsel of record on February 17, 2012.  Defendant's substitution of counsel did not occur until February 18, 2012.  However, it is established that substitute counsel received actual notice on the very same date it was served by the Plaintiff to counsel of record.  (Def.'s Mem., Ex. 9).  Although Plaintiff consented to substitution of counsel and was communicating with proposed new counsel, the Defendant had not yet filed the appropriate pleading with the court.  Because Plaintiff served counsel of record and all of Defendant's counsel actually received her discovery responses on the date due, this whole argument is entirely frivolous.  As a courtesy and because Defendant's prior counsel so requested, Plaintiff provided an additional copy of her discovery responses on substituted counsel on March 5, 2012.

4.   The latin phrase *quid pro quo* is inapplicable to discovery.

Without citation to a single authority, Defendant invokes *quid pro quo* to justify its non-cooperation in discovery.  Literally, "what for what," the phrase has been used widely in corruption or sexual harassment contexts.  *See, e.g., Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 742-43 (1998)(explaining that while term "quid pro quo" did not appear in Title VII, which forbids only "discriminat[ion] against any individual with respect to his ... terms [or] conditions ... of employment, because of ... sex," it was a recognized as a distinct cause of action.)  *Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876, 883 (2010) (recognizing a governmental interest

11

in preventing *quid pro quo* corruption under prior Supreme Court precedent.)  The concept of *quid pro quo* is specifically not found in the discovery jurisprudence of this district or division, and for good reason.  Under this logic, a party would be excused from its duty to participate in discovery when opposing a non-cooperating party.  This is specifically not the law:  a party is only excused from answering discovery when a court orders protection. *Ayers v. Cont'l Cas. Co.,* 240 F.R.D. at 222. However, each party must answer discovery fully and completely within the time permitted, even where the party has objected to discovery. *Plant v. Merrifield Town Ctr. Ltd. P'ship*, 711 F. Supp. 2d 576, 584-85 (E.D. Va. 2010) (explaining that "even assuming, *arguendo,* that the objections had a staying effect, they could not excuse plaintiffs from complying with those discovery requests to which they did not object. In any event, because plaintiffs' objections did not operate to stay the magistrate judge's binding orders, plaintiffs were obligated to file timely responses to the discovery requests, which they failed to do").

If the Plaintiff had engaged in the same kind of gamesmanship by refusing to participate in discovery, she would be quite guilty of moving the court for a sanction with unclean hands. This is quite obviously not the case here.  Plaintiff has proceeded with all due diligence in the conduct of discovery, even where she has both asked for an granted extensions of time early in the case with respect to ongoing discovery.  She has proceeded with her motion with clean hands and there is no evidence to the contrary.  With the trial date set for April 9, 2012, she is entitled to the sanction permitted by the rules where the Defendant has neither responded to the discovery promulgated by the Plaintiff nor moved for the protection of the court.

5.  Engagement in settlement negotiations does not preclude discovery.

It should be axiomatic that discovery is not stayed simply by virtue of continuing settlement negotiations. At no time did the Plaintiff indicate there should be forbearance on

discovery, but in fact indicated it wanted to make sure that the Defendant was serious about engaging in meaningful settlement negotiations before seeking the assistance of the Magistrate Judge. If the Defendant wanted to stay discovery for this purpose, it likely could not have so moved in good faith given the high bar for obtaining a stay on such grounds.

A court has broad discretion in granting or denying a motion to stay discovery, "[m]otions for a protective order which seek to prohibit or delay discovery are not favored." *Kron Med. Corp. v. Groth*, 119 F.R.D. 636, 637 (M.D.N.C. 1988); *see also Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988) ("Such motions are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems."). The moving party therefore bears the burden of showing good cause and reasonableness of stay of discovery. *Simpson*, 121 F.R.D. at 263. The moving party must show by specific facts that the interests of justice and considerations of prejudice and undue burden to the parties require a protective order and that the benefits of a stay outweigh the costs of delay. *Kron Med. Corp. v. Groth*, 119 F.R.D. 636, 638 (M.D.N.C. 1988) In considering the motion, it remains the Court's responsibility to expedite discovery and minimize delay. *Id.* (citing *Parkway Gallery Furn. v. Kittinger/Pennsylvania*, 116 F.R.D. 363, 365 (M.D.N.C. 1987)).

Additionally, a Court should not stay discovery where the discovery is necessary in defending against a motion. *See Wilderness Soc. v. Griles*, 824 F.2d 4 (D.C. Cir. 1987) (holding that the District Court abused its discretion in granting the Defendants' motion for a protective order permitting them not to respond to the Plaintiffs' interrogatories and document production requests and then ultimately granting summary judgment in favor of the Defendants on the issue

for which the discovery was originally sought); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550 (11th Cir. 1985) (explaining that it is abuse of discretion for the court to stay discovery pending a summary judgment motion if the plaintiff has been denied discovery that relates to that summary judgment motion); *Simpson*, 121 F.R.D. at 263.  Neither should the court grant the request where resolution of the motion will not dispose of the entire case. *Smith v. Waverly Partners, LLC*, No. 3:10cv28, 2010 WL 3943933, at *1 (W.D.N.C. Oct. 6, 2010) (citing *Simpson*, 121 F.R.D. at 263).  In this case, there is no legal justification to stay discovery for any reason, including the conduct of settlement negotiations.

### Conclusion

To this day, the Defendant has still not complied with its discovery obligations.  Trial is in two weeks.  It is proper that the Plaintiff's motion to exclude be granted.  It is also within the Court's sound discretion to grant the Plaintiff additional relief, including an order compelling production or the remedy of an adverse inference concerning the withheld information.

Respectfully Submitted,

Victoria Frazier,

_____/s/_____
Susan Mary Rotkis, VSB #40693
Leonard A. Bennett,VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
srotkis@clalegal.com
lenbennett@cox.net

Kristi Cahoon Kelly, VSB #72791
SUROVELL ISAACS PETERSEN & LEVY, PLC
4010 University Drive, Second Floor
Fairfax, Virginia 22030
(703) 251-5400

(703) 591-9285
kkelly@siplfirm.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Gary L. Edwards
Baker Donelson Bearman Caldwell & Berkowitz, PC
100 Med Tech Parkway
Suite 200
Johnson City, TN 37604
Email: gedwards@bakerdonelson.com


_____/s/_____
Susan Mary Rotkis, VSB #40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
srotkis@clalegal.com

Counsel for Plaintiff